[Civ. No. 3149. First Appellate District, Division Two.—December 30, 1919.]

ELIZABETH A. EVERETT, Respondent, v. STANDARD ACCIDENT INS. CO. (a Corporation), Appellant.

[1] ACCIDENT INSURANCE—ACTION ON POLICY—FRAUD—PRESUMPTION. In an action on an accident insurance policy, where the company defends upon the ground that the insured had been guilty of fraudulent misrepresentations and concealment which resulted in breaches of warranties which were contained in the application for the policy, the presumption against fraud approximates in strength that of innocence of crime.

[2] ID.—RELIEF FROM FRAUD—BURDEN OF PROOF.—One who seeks relief from fraud must allege and prove it by clear and satisfactory evidence. A mere suspicion of fraud is not sufficient.

[3] ID.—CHANGE OF NAME—PROCEDURE.—A man may lawfully change his name without resort to legal proceedings and by general usage or habit acquire another name. The name is only the means of designating the person intended; and where one assumes and comes to be known by another name than that which he properly bears, that name may be effectually employed for the purpose of designating him.

[4] ID.—VALIDITY OF MARRIAGE—PRESUMPTIONS—EVIDENCE.—Where in an action on an accident insurance policy the company defends on the ground that the insured fraudulently misrepresented that the beneficiary named was his wife, whereas the wife of the insured was a person other than such beneficiary named, unless the presumptions that the insured did not commit a crime when he contracted marriage with the beneficiary some twenty years previously and that such marriage was valid are controverted by other evidence, the jury is bound to find according to the presumption.

[5] ID.—PRESUMPTIONS — TESTIMONY    OF    INTERESTED    WITNESS — WEIGHT.—The court or jury may disregard the testimony of an interested witness as against a presumption, if the latter satisfies them.

[6] ID.—OCCUPATION OF INSURED—MISREPRESENTATIONS—EVIDENCE.— In this action on an accident insurance policy, in which the company set up the defense that the insured misrepresented the nature of his occupation, the evidence offered by it was insufficient to show either misrepresentation or a breach of warranty.

[7] ID.—INCOME OF INSURED—EVIDENCE.—In such an action, statements of the insured as to the amount of his income are not controverted by a mere showing that a certain water company, his employment with which required only a part of his time, paid him a lesser sum.

[8] ID.—COMPLIANCE WITH POLICY—CONSTRUCTION.—A provision in an accident insurance policy that "full compliance of the insured and beneficiary with all provisions of this policy is a condition precedent to recovery hereunder," relates only to those things which are required to be done by either the insured or the beneficiary after the policy is written.

[9] ID.—INTERPRETATION OF POLICY—UNCERTAINTY.—Any uncertainty or ambiguity in a contract of insurance is to be interpreted most strongly against the insurer.

[10] ID.—MATERIALITY OF WARRANTIES—ADJUDICATION OF ISSUE.— Where certain warranties in a policy of accident insurance alleged to have been breached are not such that the court can say as a

3. Right to change name, notes, 18 Ann. Cas. 704; Ann. Cas. 1914D, 427; 14 L. R. A. 692.

4. Presumption as to validity of subsequent marriage, notes, 17 Ann. Cas. 680; Ann. Cas. 1918E, 1233.

matter of law that they were material to the risk, and in an action on the policy the company puts in issue the materiality of each of the warranties by the allegations in its affirmative defenses, it cannot complain that the issue is adjudicated, the policy not having stated in clear and unmistakable terms "that a violation of specified provisions thereof shall avoid it."

[11] ID.—FAILURE TO RESCIND — MATERIALITY OF WARRANTIES — ADJUDICATION BY JURY.—Where the insurer fails to exercise the right to rescind upon the breach of alleged material warranties before action on the policy, but sets up breach of warranties as a defense to payment, if the evidence of fraud on the part of the insured is not clear and uncontradicted, so that the materiality of the warranties is a matter of law, the question of such materiality is properly left to the jury.

[12] ID.—OPINION OF AGENT—EVIDENCE.—In an action on a policy of accident insurance, testimony of the agent of the insurance company as to whether he would have written the insurance if he had known some of the facts alleged to constitute the falsity of the warranties is properly rejected.

APPEAL from a judgment of the Superior Court of San Bernardino County. H. T. Dewhirst, Judge. Affirmed.

The facts are stated in the opinion of the court.

Stephens & Stephens and Chandler P. Ward for Appellant.

Daley & Byrne and Fred A. Wilson for Respondent.

NOURSE, J.—This is an appeal from a judgment in favor of plaintiff for the full principal sum of an accident insurance policy providing for the payment of seven thousand five hundred dollars to plaintiff as the wife of Francis J. Everett, who was killed while riding a motorcycle in the city of Redlands as the result of a collision with an automobile. The policy of insurance was executed in due form and the premium paid, and proof of the death from accidental causes was properly made.

The company defended upon the ground that decedent had been guilty of fraudulent misrepresentations and concealment which resulted in breaches of warranties which were contained in the application for the policy. The misrepresentations asserted by the company were: (1) That the insured's name was Francis J. Everett, whereas his true name was

James F. Cowie; (2) that Elizabeth A. Everett was his wife, whereas the wife of the insured was Jennie B. Cowie; (3) that the insured was the superintendent of a water company, with supervising duties only, and an orange grower with supervising duties only, whereas he was a working zanjero for a water company and a working farmer, and was accustomed to perform manual labor in each occupation; (4) that his income exceeded twenty-five dollars a week, whereas it was less than that amount; (5) that his habits were correct and temperate, whereas he was living at the time in an adulterous relation with a woman not his wife. The concealment asserted related to the failure of the insured to disclose to the company the fact that he had deserted his wife, Jennie B. Cowie, and five children in an eastern state and had come to California, taken an assumed name and contracted a bigamous marriage with plaintiff.

On each one of the defenses urged by the defendant there was a substantial conflict in the evidence, which the jury resolved in favor of the plaintiff and against the defendant. On this appeal the company urges that the evidence fully supports its theory of the case and does not support the verdict in favor of the plaintiff. It is also urged, apparently with some seriousness, that any verdict against an insurance company should on appeal be treated as *prima facie* erroneous and that this court should take the entire matter from the jury and direct a judgment in favor of the company upon the record herein presented. Criticisms of certain instructions given to the jury and rulings upon the admission of evidence are also made, and these will be considered in their proper order.

The defenses above noted as 1, 2, and 5, together with the matter of concealment, are based upon the following testimony offered by the defendant: That one James F. Cowie was married in an eastern state in 1877 to one Jennie Burt and that these two lived together as husband and wife until June, 1890, when Cowie deserted his wife and five children. Mrs. Cowie never heard from her husband directly thereafter until about six months after the desertion, when she received through the mail in a roundabout way a letter in his own handwriting regretting his action and offering to return if she was willing to have him do so. Nothing further was heard from him until 1893, when, accord-

ing to one of defendant's witnesses, he appeared in San Bernardino County under the name of Francis J. Everett. Witnesses were produced on behalf of the defendant who testified that in their opinion Cowie and Everett were the same person, and one witness was produced on behalf of the plaintiff who testified that he knew Cowie well in the east, that he was also acquainted with the man named Everett in San Bernardino County, and that he did not recognize them as being the same. In April, 1895, Everett and the plaintiff in this action were licensed to marry and a marriage ceremony was regularly performed. Thereafter and continuously until the death of decedent they lived together in San Bernardino County as husband and wife. Proof was offered on the part of the defendant that the deceased never obtained any divorce from Jennie B. Cowie in San Bernardino County and that Jennie B. Cowie never obtained a divorce from her husband or received any summons or other papers in relation to an action for divorce on the part of the husband. Plaintiff relied upon the presumption of the legality of her marriage with the decedent in 1895 and their continuous cohabitation for a period of twenty years thereafter as husband and wife, failure of proof that a divorce may have been obtained during the period unaccounted for by defendant and the failure of proof as to the identity of the parties.

The facts relied upon by defendant in support of its defense noted as No. 3, relating to asserted misrepresentations as to the occupation of the decedent, are that though the decedent represented himself to be the superintendent of the West Redlands Company, a mutual irrigation company, he was, in fact, the zanjero for such company and was known as such throughout the district in which he was employed. It is also claimed that the decedent misrepresented his occupation as an orange grower with supervising duties only, because he performed some manual labor in and about his home and assisted with the care of the orange grove. The evidence upon both of these points was conflicting. The records of the company show that decedent was employed as its superintendent. The company was a small concern supplying an average of 110 inches of water per day for distribution among its stockholders during the irrigating season. The deceased had no duties to perform regarding

the acquisition of the supply of water other than to direct the engineer when to begin pumping. His chief duties were to look after the lines of distribution and measure the water out to the stockholders. He had full power to employ all necessary labor. He would go at 9 o'clock A. M. each day to measure the water to be delivered to the company on that day. He would then make his rounds of the distributing system, being employed in this capacity until about 12 o'clock noon. Frequently this completed his work for the day with the company, but on many occasions he went over the system again, commencing about 2 o'clock P. M. and finishing at about 4 o'clock P. M. On many occasions he was seen to use a shovel and a hoe in making minor repairs to the pipe-line, and even carried in his Ford machine with which he made the rounds a small supply of cement with which he repaired leaks in the pipes. On one occasion he was seen to use a wheelbarrow in removing dirt from a driveway, and on other occasions he was seen to use a wire in cleaning roots from one of the pipes. Generally the evidence in this connection was that the decedent was known both as superintendent and as zanjero, but that his chief duties were to look after the distribution and measuring of the water, to make out the water schedule, and to apportion the water to the different growers. The repairs which he made were all voluntary, he having the power to employ such labor for that purpose as he desired, and the repairs which he did make were occasional or "ten-minute jobs."

The facts relating to the occupation of decedent as an orange grower are that he and the plaintiff owned two orange groves, one not quite four and the other two and a half acres. He hired the heavy manual labor and supervised the manner in which it was performed. He did some manual labor in and about the groves and around his home place, consisting of cutting out some brush or deadwood, hoeing weeds about the house and the lawn, and small jobs in the orange groves. For instance, it was shown that on one occasion he helped operate the machine that carried around the fertilizer and did some "light pruning" and showed his employee how to use the plow on one occasion. In addition to this, when time and inclination permitted, he assisted his wife in feeding the chickens, milking the cow,

and caring for the honey-bees. All of the evidence of the defendant in connection with these acts done by decedent is extremely indefinite as to time and falls far short of proving a deliberate misrepresentation or concealment on the part of decedent on March 2, 1915, the date when the application for the policy was executed. On the other hand, the testimony on behalf of plaintiff clearly indicates. that the manual labor of which defendant complains was performed by the decedent prior to the date of his employment with the water company in January, 1915, and that the work performed by him in and about the home and the orange grove during the period of his employment with the water company was of a supervising character, as represented by him at the time of his application.

The evidence in support of the defense noted above as No. 4, relating to the income of decedent, is that as superintendent of the water company he received a salary of sixty-five dollars a month, and that consequently he misrepresented the facts as to his income to the agent when he accepted the application containing the statement, "My income per week exceeds the gross amount of weekly indemnity under all policies carried by me." In response to this defense plaintiff offered testimony that decedent's income, together with his salary from the water company, exceeded the sum of twenty-five dollars a week, the weekly indemnity provided in the policy in suit.

[1] The special defenses raised by appellant were all based upon the alleged fraud of decedent. The presumption is always against fraud. This presumption approximates in strength that of innocence of crime. (*Truett* v. *Onderdonk,* 120 Cal. 581, 588, [53 Pac. 26].) [2] One who seeks relief from fraud must allege it and prove it by clear and satisfactory evidence. A mere suspicion of fraud is not sufficient. Here the evidence was conflicting in every particular. Consideration will be given each of these special defenses in the order presented by appellant.

1. That decedent represented and warranted that his name was Francis J. Everett, whereas in truth his name was James F. Cowie. The uncontradicted evidence was that for a period of twenty-two years before the policy was written decedent had been known as Francis J. Everett, during which time he lived continuously in the county of San Ber-

nardino. Evidence was offered tending to identify him with
one James F. Cowie, who deserted his wife and children in
Minnesota some twenty-five years previously. The jury
might well have believed this evidence, but still could
not have found that there was either a misrepresentation
or breach of warranty in this particular. [3] A man
may lawfully change his name without resort to legal pro-
ceedings and by general usage or habit acquire another
name. "The name is not the person, but only a means of
designating the person intended; and where one assumes
and comes to be known by another name than that which he
properly bears, that name may be effectually employed for
the purpose of designating him." (*Emery* v. *Kipp*, 154
Cal. 83, 87, [129 Am. St. Rep. 141, 16 Ann. Cas. 792, 19
L. R. A. (N. S.) 983, 97 Pac. 17].)

2. That Elizabeth A. Everett was his wife. Even if this
be treated as a warranty, there is sufficient evidence to sup-
port a finding that it was true. Appellant relies upon the
showing that one James F. Cowie was married to Jennie
Burt in Wisconsin; that they lived together in Minnesota
until 1890, when Cowie deserted his wife and children; that
his wife had not heard from him since his desertion except
by way of a letter written in July of that year; that the
wife had not secured a divorce and had no knowledge
whether a divorce had been obtained by her husband; that
the person who it was claimed was in fact Cowie had lived
in San Bernardino County since 1893 and had not procured
a divorce in that county. [4] Respondent relies upon the
presumption that Everett did not commit a crime when he
contracted the marriage with respondent in 1895, the pre-
sumption that such marriage was valid and the failure of
identification of the decedent with Cowie. Unless these pre-
sumptions were controverted by *other* evidence, the jury
was bound to find according to the presumption. (Sec.
1691, Code Civ. Proc.) If controverted by other evidence the
presumption itself is to be treated as evidence conflicting
with the *other* evidence offered. Otherwise there would be
no need of using the word "other" in the code section cited.
Thus, the presumption of innocence of crime will support
a verdict of acquittal in a criminal case though no evidence
is offered to controvert the case of the prosecution. The
rule differs as to an inference which can be drawn only

from facts proved. Where evidence is offered controverting the inference which might ordinarily be drawn under the circumstances, the jury is bound to find according to the controverting evidence. The distinction is found in the code. Section 1958 of the Code of Civil Procedure defines an inference as "a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect." Section 1959 defines a presumption as "a deduction which the law expressly directs to be made from particular facts." Appellant cites *Maupin* v. *Solomon*, 41 Cal. App. 323, [183 Pac. 198], to the effect that controverting evidence does not create a conflict with a presumption so that a finding of the jury in accordance with the presumption may be sustained. But the supreme court in denying a rehearing in that case expressly rejected that rule and said that they understood the opinion to relate to an inference and not to a presumption. Other cases cited by appellant fail to distinguish between presumptions and inferences. In any event, the extent of the rule announced in these cases is that where clear and convincing proof is offered controverting all the facts upon which the presumption is based, the presumption is thereby overcome and dispelled and no conflict in the evidence arises. Here there is a lapse of nearly three years during which Cowie may have obtained a divorce, and the fact that Mrs Cowie moved to another state immediately after the desertion and moved frequently from place to place thereafter might account for the fact that she obtained no summons in such an action. Furthermore, the jurors were not bound to believe the testimony of the witness purporting to be Mrs. Cowie, whose deposition was taken in Mendocino County, she not having been otherwise identified as such. [5] The court or jury may disregard the testimony of an interested witness as against a presumption, if the latter satisfies them. (*Adams* v. *Hopkins*, 144 Cal. 19, [77 Pac. 712].) This witness was shown to have consulted counsel with a view to recovering on the policy if she could show that she was the legal wife of the decedent. Then, again, the jurors were not bound to believe the testimony of other witnesses attempting to identify Cowie with decedent. The photograph of Cowie taken before the desertion in Minnesota was

identified by the witness, Mrs. Cowie, but no attempt was made to show any likeness between the photograph and the decedent.

This branch of the case is controlled by the decision of the supreme court in *Hunter* v. *Hunter,* 111 Cal. 261, 267, [52 Am. St. Rep. 180, 31 L. R. A. 411, 43 Pac. 756], where the court say: "It is presumed that a person is innocent of crime or wrong. (Code Civ. Proc., sec. 1963.) There is also a presumption, and a very strong one, in favor of the legality of a marriage regularly solemnized. Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement, perhaps, would be that the burden is cast upon the party asserting guilt or immorality to prove the negative—that the first marriage had not ended before the second marriage." To the same effect are *Estate of Baldwin,* 162 Cal. 471, 488, [123 Pac. 267]; *Wilcox* v. *Wilcox,* 171 Cal. 770, 774, [155 Pac. 95]; *In re Pusey,* 173 Cal. 141, [159 Pac. 433]; *Estate of Hughson,* 173 Cal. 448, 453, [160 Pac. 548]. The evidence offered by appellant on this branch of the case would not sustain a conviction of bigamy if decedent had been tried for that offense. The law presumes that he did not commit bigamy, that he did not commit perjury when he secured the license to marry respondent, and that he did not commit fraud when he procured the policy of insurance. The burden was on appellant to overcome these presumptions, and this it failed to do.

3. The third defense upon which argument is presented on this appeal relates to the occupation of decedent. In this, as in all the other special defenses, appellant put squarely in issue the materiality of the representations, alleging "that the fact that the duties of the said decedent were not supervising duties only was material to, and affected the hazard under the risk assumed by the terms of said policy." To establish this defense it was necessary to prove the materiality of the representations as well as their

falsity, unless they could be deemed material as a matter of law.

The facts presented to the jury were that upon the books of the water company he was designated superintendent. Appellant asserts that among the farmers he was known as zanjero. The difference between the use of the two titles depends mainly upon the community in which the party is employed. Zanjero is a Spanish word commonly used to designate a water boss of an irrigating concern. The Standard Dictionary gives this definition: "A person employed to distribute the water of an irrigating canal in due proportion among those entitled to use it." If during the course of his employment he should take a shovel or a hoe or make minor repairs in and about the system, he would suffer no injury to his reputation whether he be known as a superintendent or a zanjero. He was asked to state what his *duties* were. He answered, "Superintendent, water company." The agent of the company added, "Supervising duties only." The testimony of the president and directors of the company shows the truth of this statement. There is no conflict in the evidence upon this point. Appellant offered a mass of testimony to show that at certain times after the policy was written decedent was seen making some "ten-minute repairs," or using a shovel or a hoe to find a leak in the pipes. The most that this testimony could prove would be that there had been a change of occupations after the policy was written, a matter not in issue, because the policy did not prohibit a change of occupations, but expressly permitted it. There was no evidence tending to show that prior to or at the time the policy was written the decedent had engaged in any of these minor repairs.

The word "occupation" means the principal business in which a man engages. His duty is that which he is bound to do. The evidence here was that the duties of the insured were to superintend the work and to employ necessary labor to keep up the system. It was also shown that any minor repairs made by him were made voluntarily because they were not of sufficient importance to justify the employment of a laborer. Here again appellant, by its answer, put in issue the materiality of this representation and warranty,

and on the trial showed that the only other classification
under which the insured could have been enrolled was that
of "pipe-line laborer." What a misrepresentation it would
have been if the insured had given his occupation as that of
a pipe-line laborer!

The evidence relating to the insured's occupation as an
orange grower was of like character. It was to the effect
that he supervised the care of two small orange groves,
employed all of the heavy labor, but occasionally hoed weeds
around his front yard, milked one cow, and brought in the
honey from the honey-bees. The evidence as to these acts,
however, was not definite as to time, the greater part of it
relating to acts which were done by the decedent prior to
his employment as superintendent of the water company,
in January, 1915, three months prior to the date of the
policy. From this the jury could properly infer that upon
his employment as superintendent of the water company
his labor about the orange groves ceased. **[6]** The evi-
dence offered by appellant on the matter of occupations by
decedent is insufficient to show either misrepresentation or
a breach of warranty in connection with either occupation.

4. If it be conceded that the acceptance by decedent
without objection of the printed matter in the application
above quoted constitutes a warranty on his part that his
weekly income was in excess of twenty-five dollars, there
was a substantial conflict in the evidence as to the actual
income of the decedent from his two occupations given as
water superintendent and orange grower, which the jury
resolved in favor of respondent and against the appellant.
But it may well be said that the printed matter referred
to in the application was not a warranty on the part of the
applicant that his income exceeded twenty-five dollars a
week. He did warrant that his income exceeded the gross
amount of weekly indemnity under all policies carried by
him. The policy upon which this suit rests had not then
been issued. If the company intended this statement to
be a warranty that the weekly income exceeded that pro-
vided for in the policy which might thereafter be issued
by it, it was guilty of a concealment equal only to that
charged against the applicant in the particulars hereinbefore
noted.

The agent of the company who wrote the insurance, called by appellant, testified that he questioned the insured fully as to his occupations and income before the policy was written. Two occupations were given—superintendent of water company and orange grower. The income of an orange grower depends upon many conditions beyond his control. The policy was written for the year commencing March 2, 1915. The inquiry as to income related to the probable return of that period. The statements of the applicant relating thereto were more matters of opinion than statements of facts. If they should be treated as warranties that the income exceeded twenty-five dollars a week, they could be based only on an estimate that such would be the income for the ensuing year under ordinary conditions. The fact that a frost had injured the orange crop in 1913 does not justify a conclusion that such would be the result in 1915.

The presumption of innocence of crime and of fraud cast upon appellant the burden of proof. [7] It voluntarily put in evidence, the statements of decedent as to his income and attempted to controvert this merely by the showing that his salary with the water company was sixty-five dollars a month. Upon this point it presented the issue in its answer merely by the allegation that the income of decedent did not "exceed sixty-five dollars a month." This it failed to prove. It alleged that the warranty was material to the risk covered, yet from its own manual which it put in evidence it appears that the company fixed the indemnity arbitrarily according to occupation and without regard to weekly income.

5. That his habits were correct and temperate, whereas he was living in an adulterous relation with a woman not his wife. The only positive evidence on this branch of the case was that decedent had lived "a respectable, honorable life here and was respected by all his neighbors." Against this evidence was the suspicion that decedent was in fact Cowie, who had deserted his wife, and that decedent was illegally cohabiting with respondent. In view of the evidence heretofore discussed and the presumption covering the legality of the marriage with respondent, the evidence falls short of proving the alleged falsity of this warranty.

The concealment relied upon by appellant related to the failure of decedent to disclose the facts of the desertion and the contraction of a bigamous marriage, failure of proof of which has already been noted.

The objections relating to the instructions given to the jury may be generally stated as involving the single point whether a question of the materiality of the warranties should have been submitted to the jury. Section 2611 of the Civil Code provides: "A policy may declare that a violation of specified provisions thereof shall avoid it, otherwise the breach of an immaterial provision does not avoid the policy." Section 2610 of the same code provides: "The violation of a material warranty, or other material provision of a policy, on the part of either party thereto, entitles the other to rescind." In *Victoria Steamship Co.* v. *Western Assur. Co.*, 167 Cal. 348, 357, [139 Pac. 807, 811], it was said: "Under these provisions no right to avoid or rescind a subsisting policy occurs from the violation of any provision thereof, whether technically a warranty or not, unless such provision is material, except in cases where the policy itself declares that such breach shall avoid it. This policy makes no such declaration. We cannot agree with the defendant's counsel in their contention that the principles stated in sections 2608 and 2610 are applicable only to implied warranties and that the principle of the common law that a violation of an express warranty avoids the policy, although the warranty be immaterial, applies to and controls this case."

The language of the policy relied on by appellant as meeting the terms of section 2611 is: "Full compliance of the insured and beneficiary with all provisions of this policy is a condition precedent to recovery hereunder and any failure in this respect shall forfeit to the company all right to any indemnity." **[8]** "Compliance" by the insured and the beneficiary with the provisions of the policy relates to those things which are required to be done by either the insured or the beneficiary after the policy is written. **[9]** Any uncertainty or ambiguity in a contract of insurance is to be interpreted most strongly against the insurer. (*Victoria Steamship Co.* v. *Western Assur. Co.*, 167 Cal. 353, [139 Pac. 810].) **[10]** The language of this policy falls short of a declaration "that a violation of specified provi-

sions thereof shall avoid it." If such had been the intention, the policy should have so declared in clear and unmistakable terms. None of the warranties of this policy alleged to have been breached was such that the court could say as a matter of law it was material to the risk, and appellant, having put in issue the materiality of each of the warranties by the allegations in its affirmative defenses, cannot complain that that issue was adjudicated. In this respect the case differs from *McEwen* v. *New York Life Ins. Co.*, 23 Cal. App. 694, [139 Pac. 242] ; *Westphall* v. *Metropolitan Life Ins. Co.*, 27 Cal. App. 734, [151 Pac. 159] and *Porter* v. *General Accident etc. Assur. Corp.*, 30 Cal. App. 198, [157 Pac. 825], wherein it was held that the materiality of the warranties was determined by the parties themselves when they appeared in written answers to written questions in the application. None of these cases considered the effect of sections 2610 and 2611 of the Civil Code. Two are cited in the opinion of Justice Melvin in *Whitney* v. *West Coast Life Ins. Co.*, 177 Cal. 74, [169 Pac. 997], to the effect that where the proof of fraud is clear and uncontradicted, the question of materiality is one of law and not of fact.

[11] In *Solomon* v. *Federal Ins. Co.*, 176 Cal. 133, [167 Pac. 859], it was said that section 2612 of the Civil Code was limited by section 2610 of the Civil Code, which permits a party to rescind upon breach of a material warranty. But rescission must be made before action on the policy. (Civ. Code, sec. 2583.) It is where the insurer fails to exercise the right to rescind and sets up breach of warranties as a defense to payment, if the evidence of fraud on the part of the insured is not clear and uncontradicted so that the materiality of the warranties is a matter of law, that the question of such materiality is properly left to the jury.

[12] Objection is made to the refusal of the trial court to permit the agent of the appellant company to testify whether he would have written the insurance if he had known some of the facts alleged to constitute the falsity of the warranties. The trial court properly rejected this testimony. It was nothing more than the individual opinion of an employee of the company as to what he would have

done under certain circumstances. Other objections raised do not require consideration.

The judgment is affirmed.

Langdon, P. J., and Brittain, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 26, 1920.

All the Justices concurred.