[S. F. No. 15282. In Bank.—March 21, 1935.]

FRANK WILSON, Petitioner, v. THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent.

Robinson, Price & Macdonald, Harrison S. Robinson and Robert W. Macdonald for Petitioner.

Thomas M. Gannon and J. C. Hughes for Respondent.

LANGDON, J.—This is a petition for a writ of prohibition to restrain the respondent superior court from authorizing certain acts by the building and loan commissioner of this state.

Within the last few years many building and loan associations in California have become financially involved, and pursuant to the terms of the Building and Loan Act, the commissioner has taken over the business of a number of such associations for the purpose of liquidation. The present proceeding arises out of certain contemplated action in connection with his winding up of the affairs of California Mutual Building and Loan Association, although it appears that the same thing has been done and will be done in many other cases unless restrained. What the commissioner seeks to do may be briefly stated. An association in liquidation has a number of creditors, including depositors and certificate holders, whose claims are presented and approved. It has certain assets, including real property, and notes secured by mortgage or deed of trust on real property. Normally, no doubt, the liquidator would sell such real property, or enforce the obligations of overdue notes by action or sale of the security, and would use the cash realized in the payment of approved claims. Occasionally, under an express power conferred by the statute, the commissioner negotiates an exchange of real property owned by the association for approved claims against the association. In the instant case he has attempted to exchange not real property, but a promissory note secured by deed of trust, for approved claims. Petitioner is a holder of an approved claim against this association, and in a representative suit on behalf of himself and other such holders, attacks this procedure as beyond the powers conferred upon the commissioner by the statute.

■ The problem is clarified somewhat by an examination of the proposed transfer in detail. The association is the owner of a promissory note in the principal sum of $2,900, on which at the time the exchange was negotiated there was due for principal and interest a total of $3,000.79. The note was secured by a deed of trust on property appraised at $900. The petition filed in the superior court by the commissioner alleges that the makers of the note are insolvent, and that no deficiency judgment could be collected against them. The person with whom the exchange was agreed upon offered to transfer approved claims against the association, based upon investment certificates, in the sum of $2,600 par value. It appeared, therefore, from the petition, that by making the exchange the association would be saved the cost of foreclosure or other enforcement of the obligation represented by the note, and the additional cost of real estate commissions incident to any subsequent sale of the property in the event that it became necessary for the association to purchase at the sale; and that it would extinguish liabilities in the sum of $2,600 by giving up assets valued only at $900. It further appeared from the said petition that upon determining the total value of the assets of the association, and the claims against it, the estimated "surrender value" of approved claims was 45 per cent. In other words, the approved claims having a par value of $2,600 had an estimated surrender value of $1170, which is $270 more than the appraised value of the security which would be given in exchange by the association. There is no challenge to these figures, and their substantial accuracy may be taken as established. The transaction is thus shown to be of substantial benefit to the association, and of no harm whatever to the holders of claims against it. No charge is made, moreover, of any misconduct or unfairness in connection therewith. The single issue, then, is whether the commissioner possesses the necessary power under the statute.

The Building and Loan Association Act (1 Deering's Gen. Laws, 1931, Act 986, p. 460), as amended in 1933 (Deering's 1933 Supp., p. 1199), is the source of the commissioner's power in this connection. Section 13.11 provides that where it appears that any association is in an unsafe condition the commissioner may take and retain possession

of the property, business and assets until its affairs are liquidated, or it resumes business with his consent. Section 13.13 provides that upon taking such possession he shall have authority to collect money "and *to do such other acts as are necessary or expedient* to collect, conserve or protect its business, property and assets". Section 13.16 provides that in liquidating the affairs of an association he shall have power to approve and pay just claims; "and *on the order of the superior court* of the county in which the principal office in this state of such association is located, given and made after a hearing on such notice as the court shall prescribe, *to compound bad or doubtful debts or claims, and to sell, convey and transfer real and personal property"*. The same section gives him power to execute any instruments "necessary and proper to effectuate any sale of real or personal property or other transaction in connection with the liquidation" of an association. Section 13.16a gives him the power, subject to approval of the court after hearing, to accept approved claims based on investment certificates in exchange for *real property* of the association, the claims being accepted at their respective surrender values as estimated by the commissioner and fixed and determined by the court.

Section 13.13, *supra,* also contains the following blanket provision: "Whenever the commissioner shall be in possession of the business, property and assets of any association, and regardless of whether or not he shall be liquidating the affairs of such association, the commissioner may in his discretion (1) apply to the superior court of the county in which the principal office in this state of such association is located for an order confirming any action theretofore taken by the commissioner, *or authorizing the commissioner to do any act or to execute any instrument not expressly authorized by this act,* which order shall be given and made after a hearing on such notice as the court may prescribe. . . ."

The foregoing provisions expressly authorize the exchange of *real property* for approved claims, but do not specifically cover the exchange of *personal property* (such as the promissory note involved herein) for approved claims. It is petitioner's contention that the act thereby discloses a de-

liberate legislative intent to deny this latter power. It is argued that the commissioner is in effect a statutory receiver whose powers are limited to those given by statute; that the power to sell personal property, granted in section 13.16, does not include the power to exchange; and that the blanket provision in section 13.13 cannot be deemed to have conferred unlimited power upon the commissioner, but must be construed with reference to its purpose, namely, the liquidation of the affairs of the association. In our opinion this position is unsound, and the proposed action of the commissioner is within his powers.

The power to sell personal property, expressly granted in section 13.16, does not necessarily mean the restricted power to sell for cash. Language such as this has been sometimes interpreted to mean "sell for cash" (see *Iowa Service Co.* v. *City of Villisca,* 203 Iowa, 610 [213 N. W. 401]), and sometimes held to include exchanges, where the property received in exchange was taken at a fixed money value, so that the equivalent of money was received as the price. (*Edward* v. *Ioor,* 205 Mich. 617 [172 N. W. 620, 15 A. L. R. 256]; *Roberts* v. *Northern Pac. R. Co.,* 158 U. S. 1, 18 [15 Sup. Ct. 756, 39 L. Ed. 873]; *Ullmann* v. *Land,* 37 Tex. Civ. App. 422 [84 S. W. 294]; *Merritt* v. *American Catering Co.,* 71 Wash. 426 [128 Pac. 1074]; *People* v. *Middleton,* 14 Cal. 540; *Mansfield* v. *District Agricultural Assn.,* 154 Cal. 145 [97 Pac. 150].) Moreover, in the Uniform Sales Act which governs sales of goods in California, a sale is defined as a transfer "for a consideration called the price" (Civ. Code, sec. 1721, subd. 2), and the price "may be made payable in any personal property" (Civ. Code, sec. 1729, subd. 2), thus including exchange within the meaning of sale as used in the act. (See Commissioners' Note, 1 Uniform Laws Annotated, p. 81; *Edward* v. *Ioor, supra.*) In *People ex rel. Davis* v. *Middleton, supra,* the commissioners of the funded debt of the city of San Francisco had power to sell certain real property and apply the proceeds to the liquidation of the floating debt of the city. They undertook to accept in payment scrip representing part of said indebtedness, and the court upheld their power to do so. The Middleton case was approved and followed in *Mansfield* v. *District Agricultural Assn., supra,* where the court said (154

Cal. 147): "Though the word 'sell' itself in transactions touching personal property usually has reference to a pecuniary or money consideration, yet courts have never hesitated to give the word a broader significance, when the meaning of the law or of a private contract seemed to call for it, and the much more generally accepted definition of a sale is the exchange of an interest in real or personal property for money or its equivalent." In the instant case, both the claims and the note given in exchange were valued at a fixed price, so that the transfer was made for the equivalent of money. Nor should it be forgotten that the asset transferred was of uncertain value in view of the insolvency of the makers of the note, and that the statute contains the statement that the commissioner may, upon court order, "compound bad or doubtful debts or claims" (sec. 13.16).

It is apparent from the foregoing that by a reasonable interpretation of the statute, the power claimed by the commissioner may be found to exist. The petitioner argues for a strict construction, but advances no compelling reasons therefor. The act is designed to accomplish an important and beneficial public service, the liquidation of insolvent associations in the interest of creditors and claimants. The "liquidation" of a business is the winding up or settling with creditors and debtors (see *Lafayette Trust Co.* v. *Beggs,* 213 N. Y. 280, 283 [107 N. E. 644]; *Ex parte Amos,* 94 Fla. 1023, 1035 [114 So. 760]), and the term does not have the restricted meaning urged by petitioner, namely, the sale of the assets for cash. The successful achievement of the object of the statute requires broad rather than limited powers, and justifies a liberal rather than a strict construction. Not only is this sound policy, but it is in accordance with the unmistakable language of the act itself. Nothing can be clearer, from a reading of the blanket provision of section 13.13, than a legislative intent to give the widest possible powers to the commissioner, when he acts under court order, after notice and hearing. The authority "to do any act or to execute any instrument not expressly authorized by this act" may not be a grant of unlimited power, but, taken in connection with the specific powers to sell personal property and compound doubtful debts, it unquestionably covers the proposed exchange of personal property for approved claims.

The alternative writ of prohibition heretofore issued is discharged, and the application for a peremptory writ is denied.

Preston, J., Curtis, J., Shenk, J., Thompson, J., Seawell, J., and Waste, C. J., concurred.