[L. A. No. 22379. In Bank. Apr. 28, 1953.]

CITY OF LOS ANGELES, Respondent, v. RANCHO HOMES, INC., Appellant.

Robert S. McClean for Appellant.

Morrow & Morrow and H. Bradley Jones as Amici Curiae on behalf of Appellant.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, and James A. Doherty, Deputy City Attorney, for Respondent.

EDMONDS, J.—The city of Los Angeles sued Rancho Homes, Inc., to recover the amount assertedly due the city for license taxes. The corporation's appeal from a judgment in favor of the city requires the construction of the ordinance which is the basis of the controversy.

Rancho Homes was organized, among other purposes, "to carry on the business of acquiring, subdividing, improving, selling and otherwise dealing in and disposing of real property." Commencing in 1948, the corporation erected 150 houses on land which it owned. Between 1949 and 1951, it sold all of them, realizing gross proceeds in the amount of $1,539,445.

No license to transact this business was obtained by the corporation, nor did it pay a license tax based upon the amount of the sales. Acting under section 21.190 of the city's licensing ordinance (Los Angeles Municipal Code, art. I, ch. 2; General Ordinance No. 77,000), the city clerk notified the corporation that an assessment had been levied against it for delinquent license taxes and penalties.

Upon the corporation's refusal to pay the assessment, the city commenced the present action. Each party filed a motion for summary judgment with supporting affidavits; the trial court granted the city's motion and denied that of Rancho Homes. The appeal is from the judgment in favor of the city.

Article I, chapter 2 of the Municipal Code of Los Angeles, provides that no person may engage in any business, profession, trade or occupation specified in the article without first having obtained a license and paid the required license fee. (§§ 21.10 and 21.49.) At the time this action was commenced, section 21.190 read in part: "(a) Every person engaged in

any trade, calling, occupation, vocation, profession or other means of livelihood, as an independent contractor and not as an employee of another, and not specifically licensed by other provisions of this Article, shall pay a license fee in the sum of $12.00 per calendar year or fractional part thereof for the first $12,000 or less of gross receipts, and in addition thereto, the sum of $1.00 per year for each additional $1,000 or fractional part thereof, of gross receipts in excess of $12,000.''

As ground for a reversal of the judgment, Rancho Homes contends that section 21.190 expressly excludes from its operation the sale of realty by its owner. The city takes the position that the manifest intention of the city council, as well as a long-standing administrative interpretation, is to the contrary.

The corporation construes the section as applicable only to persons rendering personal services. This construction is made clear, it is argued, by the use of the phrases ''trade, calling, occupation, vocation, profession or other means of livelihood'' and ''as an independent contractor.''

Although such terms commonly embrace persons engaged in rendering personal services, they are not limited to that activity. ''Trade'' has been defined as ''equivalent to occupation, employment or business whether manual or mercantile. Whenever any occupation, employment or business is carried on for the purpose of profit or gain or livelihood, not in the liberal arts or learned professions, it is constantly called a trade.'' (*Babcock* v. *Laidlaw*, 113 N.J.Eq. 318, 321 [166 A. 632] ; see, also, *State* v. *Worth*, 116 N.C. 1007, 1010 [21 S.E. 204].) ''The word 'occupation' . . . is an extremely broad term sufficient to include any business, trade, profession, pursuit, vocation, or calling.'' (*State* v. *Van Daalan*, 69 S.D. 466, 474 [11 N.W.2d 523] ; see, also, *Everett* v. *Standard Acc. Ins. Co.*, 45 Cal.App. 332, 342 [187 P. 996].)

The activities of Rancho Homes were more than simply those of a landowner who sells his realty. As shown by its articles of incorporation, the corporation's purposes included ''acquiring, subdividing, improving, selling and otherwise dealing in and disposing of real property.'' Such a course of conduct reasonably may be denominated a ''trade'' or ''occupation.'' (See *Milwaukee Land Co.* v. *State*, 188 Wash. 52, 55 [61 P.2d 996].)

For the proposition that ''independent contractor'' refers only to the rendition of services, several decisions are

cited which define the term, using the words "personal services." However, those cases were decided under workmen's compensation laws or dealt with an employer's liability under the theory of *respondeat superior,* and the scope of inquiry was whether one performing personal services did so in the capacity of an independent contractor or as an employee. No decision is cited which holds specifically that one may not be an independent contractor without performing personal services. ▆▆▆ That term may assume a variety of meanings according to the intent with which it is used in particular legislation. (*Cf. National Labor Relations Board* v. *Hearst Publications,* 322 U.S. 111, 121-122 [64 S.Ct. 851, 88 L.Ed. 1170].)

The legislative history of the ordinance, as stated in the uncontroverted affidavit of the city clerk, demonstrates an intent to make the scope of operation of section 21.190 a very broad one. Pursuant to a resolution of the city council preparatory to study and enactment, the city attorney proposed the addition of section 21.190 for the purpose of "taxing all businesses not otherwise specifically licensed." The mayor rejected the ordinance passed by the council with written objections which placed his disapproval upon the ground that it might be construed as including the earnings of employees.

Subsequently, the mayor approved an ordinance in a revised form which included a qualification that the business be conducted "as an independent contractor and not as an employee of another." (Ordinance No. 90,555; approved May 29, 1946.) It further stated: "The term 'independent contractor' is used in this section as defined in Section 3353 of the Labor Code of the State of California, and the term 'employee' is used in this section as defined in Section 3351 of said code." Two months later, the section was amended to delete reference to the Labor Code sections. (Ordinance No. 90,736; adopted July 31, 1946.) The reason for the change, as shown by the report of the city council's committee on revenue and taxation, was that "inclusion of the term 'independent contractor' and the definition of that term operates to severely curtail the scope of the ordinance in a manner contrary to the intention of the Council when the ordinance was first adopted."

Even if the section may be construed as including transactions other than the rendition of personal services, the corporation asserts, it does not include sales of real property. This

contention is based upon sections 21.08(i)\* and 21.08(s)† of the code, purporting to define the terms ''gross receipts'' and ''sales.'' According to those definitions, it is argued, gross receipts may include only those sales which result from a transfer of tangible personal property.

█ Section 21.49, the general provision requiring the obtaining of a license and payment of a license fee, assigns to each subsequent section in the same article two functions: first, specifying the businesses to be licensed, and secondly, prescribing the amount of license fee or tax. Each of the sections is in substantially the same form. It first designates the business required to be licensed and follows with a statement of the amount of the license fee. Section 21.190 is typical of that arrangement. Starting with a description of the businesses required to be licensed (''any trade, calling, occupation, vocation, profession or other means of livelihood . . . not specifically licensed by other provisions of this article. . . .''), it follows with a statement of the sum to be paid (''shall pay a license fee in the sum of $12.00 per calendar year or fractional part thereof for the first $12,000 or less of gross receipts. . . .'').

The corporation's position may be sustained only if the term ''gross receipts,'' as used to specify the amount of the license fee, was intended to be a limitation upon the types of businesses for which a license is required to be obtained. A literal reading of the section does not show that intention. █ Nor may an intent to exclude proceeds from sales of real property reasonably be drawn from the language of

\*Section 21.08(i) defines gross receipts as follows: "The total amount of the sales price of all sales, the total amount charged or received for the performance of any act, service or employment of whatever nature it may be, whether such service, act or employment is done as a part of or in connection with the sale of goods, wares, merchandise or not. . . ."

†Section 21.08(s) provides: "the words 'sale' and 'sell' shall be deemed to include and refer to: the making of any transfer of title, in any manner or by any means whatsoever, to tangible personal property for a price, and to the serving, supplying or furnishing, for a price, of any tangible personal property fabricated or made at the special order of consumers who do or who do not furnish directly or indirectly the specifications therefor. A transaction whereby the possession of property is transferred but the seller retains the title as security for the payment of the price shall likewise be deemed a sale. The foregoing definitions shall not be deemed to exclude any transaction which is or which, in effect, results in a sale within the contemplation of law."

█

section 21.08(i), which defines "gross receipts." That definition is in the broadest possible terms, including "all sales," the amount charged "for the performance of any act, service, or employment of whatever nature it may be," and numerous other items. It is only when "sales" is given the restricted interpretation placed upon it by Rancho Homes in construing section 21.08(s), that the meaning of "gross receipts" becomes limited.

Whether or not the latter section was intended to refer only to transfers of tangible personal property is questionable. The first portions of the section, according to the briefs of the parties, were based upon Revenue and Taxation Code section 6006, which defines "sale" for the purposes of a retail sales tax. There, the tax is limited to transfers of tangible personal property.

Section 21.08(s), however, adds a provision not found in the Revenue and Taxation Code section. It provides: "The foregoing definitions shall not be deemed to exclude any transaction which is or which, in effect, results in a sale within the contemplation of law." As explanation for this latter provision, Rancho Homes asserts that the intention of the city council was to include transactions in fact sales but in form some other business arrangement. The city contends that the contrasting use of the words "include" and "exclude" in the section demonstrates an intention that "include" should be given its normal significance as a word of enlargement and not as a word of limitation or restriction. Within the normal contemplation of law, the city's argument continues, the words "sale" or "sell" are broad enough to include transfers of title to both realty and personalty. (*Wilson* v. *Superior Court,* 2 Cal.2d 632, 635 [43 P.2d 286].)

As shown by the affidavit of the city clerk, his administrative practice has been to include as one of the classifications under section 21.190 that of "owner-builder," which is defined as one who constructs improvements upon real property with the object of selling it. Since enactment of the section in 1946, a tax has been exacted from several hundreds of persons engaged in those activities. And "although not necessarily controlling, as where made without the authority of or repugnant to the provisions of a statute, the contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such con-

struction unless it is clearly erroneous or unauthorized.'' (*Coca-Cola Co.* v. *State Board of Equalization,* 25 Cal.2d 918, 921 [156 P.2d 1]; *Holloway* v. *Purcell,* 35 Cal.2d 220, 226 [217 P.2d 665].)

 Although the corporation's position is tenable, the construction given section 21.190 by the city is a reasonable one and in accordance with the announced policy underlying the section, that of taxing all businesses not otherwise specifically mentioned by the ordinance. Presumably with full knowledge of the administrative action of the city clerk in exacting taxes according to that interpretation of the ordinance, the city council has amended the section five times with no change indicating an intention to exclude sales of real property. Under these circumstances, there is no reasonable basis for holding that such construction is ''clearly erroneous or unauthorized.''

Furthermore, as conceded by the briefs of both parties, during the pendency of this litigation the city council amended the license ordinance to include a provision which reads: ''Notwithstanding any other provision of this article, every person engaged in the business of selling real property in which said person has any equity or title shall pay for each calendar year, or portion thereof, the sum of $12.00 for the first $12,000 or less, of the annual gross receipts, . . .'' (§ 21.193.) There is no change in the definitions of ''gross receipts'' or ''sale.'' A change in a tax statute at a time when certain persons or groups are resisting the imposition of the tax indicates a legislative intent to clarify rather than to change the existing law. (*Bermite Powder Co.* v. *Franchise Tax Board,* 38 Cal.2d 700, 704 [242 P.2d 9]; *Coca-Cola Co.* v. *State Board of Equalization, supra,* p. 923.)

 There is no merit in the contention that the section is too vague or uncertain to satisfy the requirements of due process of law. ''Catch-all'' type statutes frequently have been upheld by the courts. (See 37 C.J. 186.) Furthermore, this same section of the Los Angeles Municipal Code has been before this court and the District Court of Appeal on prior occasions and, although the specific problem of constitutionality was not considered, in each instance the section was interpreted and applied. (*Martin Ship Service Co.* v. *City of Los Angeles,* 34 Cal.2d 793 [215 P.2d 24]; *Rexall Drug Co.* v. *Peterson,* 113 Cal.App.2d 528 [248 P.2d 433]; *Franklin* v. *Peterson,* 87 Cal.App.2d 727 [197 P.2d 788].)

In the Martin and Franklin cases, application of the section to businesses not specifically mentioned in other sections of the ordinance was upheld.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied May 21, 1953.