C. W. WYATT, Plaintiff, Appellee, v. TOWN OF MANNING et al., Defendants, Appellants; IOWA PUBLIC SERVICE COMPANY, Intervenor, Appellee.

No. 42135.

SEPTEMBER 26, 1933.

REHEARING DENIED APRIL 5, 1934.

Stipp, Perry, Bannister & Starzinger, for appellants.

F. H. Cooney, for appellee.

B. J. Price, for intervenor.

KINDIG, J.—Manning, Iowa, is a municipal corporation, duly organized and existing under and by virtue of the laws of Iowa. During the times hereinafter material, A. D. Wiese was the mayor

of Manning, and L. E. Schelldorf, C. T. Dietz, J. A. Bruck, John A. Barten, and Harry Hoffmann were members of the town council thereof. O. V. Schelldorf, during that period, was the town clerk.

On November 3, 1932, the town of Manning, through its council, authorized a special election for the submission of the following public questions:

"Shall the Town of Manning, Iowa, be empowered and authorized to establish, erect, maintain and operate a municipal electric light and power plant with all the necessary poles, wires, machinery, apparatus, buildings, site, and other requisites for such plant, at a maximum expenditure for the establishment thereof not exceeding the sum of $135,000.00; said plant to be paid for solely and only out of the earnings of said plant, without the incurring of any indebtedness therefor by the said Town of Manning, Iowa?" "Shall the Town of Manning, Iowa, place the management and control of its municipal electric light and power plant in the hands of a board of trustees?"

In accordance with the aforesaid authorization, those public questions, after the publication of due notice, were submitted to the qualified electors of Manning on December 9, 1932. At the election there were cast 640 votes for, and 248 votes against, the proposition to establish the electric plant. There were also cast at the election 597 votes for, and 184 votes against, the proposition of placing the management of the plant in the hands of a board of trustees. Accordingly, the vote was canvassed, and both propositions were declared carried.

Thereafter, on March 14, 1933, the plaintiff-appellee, O. W. Wyatt, a resident taxpayer and elector in the town of Manning and a user of electric energy therein, commenced the present suit in equity to enjoin the town and its officials from establishing said electric plant under the authority of the aforesaid election, on the theory that the election did not validly authorize the establishment of the plant, warrant the execution of contracts therefor, permit the financing thereof from the earnings of the plant, or justify the securing of the contracts by pledging the net earnings of the plant or the property purchased.

Then on March 27, 1933, thereafter, the Iowa Public Service Company, the intervenor-appellee, intervened in said cause and asked relief which, for all material purposes, was the same as that prayed

for by the plaintiff-appellee. This intervenor company is a Delaware corporation, holding an electric franchise in the town of Manning. It is a taxpayer in said town.

Generally speaking, the plaintiff and the intervenor-appellees, sought to restrain the city of Manning from establishing its electric plant because: First, the public measure which should have been submitted to the electors at such election was not printed in full upon the ballot; second, the proposition submitted to the electors was bad for duality, in that the maximum sum of $135,000 specified covered not only the cost of the establishment and erection, but also the cost of maintenance and operation; third, the proceedings were instituted by the council and not by the electors; and, fourth, the indebtedness contemplated is in violation of section 3, article XI, of the Constitution of Iowa.

The town of Manning and its officers answered to the petition, and likewise to the petition of intervention. So on March 16, 1933, the cause came on for trial before the district court. At that trial, part of the evidence was stipulated, and the remaining portion of it admitted in the regular way. After the submission, the district court overruled many of the contentions made by the plaintiff and the intervenor, but nevertheless granted the injunction on the ground that the ballot did not contain the full public measure, because it lacked: First, the proposition to pledge the plant as security for the purchase price; second, the statement of the maximum rates to be charged consumers for electricity; and, third, the statement of the rate of interest to be paid by the municipality on the unpaid purchase price.

From the judgment then entered, the town and its officers appeal. Although the district court overruled part of the contentions made by the plaintiff and the intervenor, and sustained others, these parties, although they have not appealed, now argue all the propositions which they submitted to the district court. This the plaintiff and the intervenor may do in order to sustain the judgment of the district court, providing the matters now argued were mere findings of the court below, as distinguished from the judgment thereof. Concerning this, we said in Northwestern Mutual Life Insurance Co. v. Blohm, 212 Iowa 89, reading on pages 96 and 97, 234 N. W. 268, 271:

"All equity cases are triable de novo in this court. An appeal,

therefore, brings up the entire record as duly contained in the abstract, or otherwise properly certified, and the case is here tried anew. If the judgment of the district court can be sustained upon any theory, the same may be done regardless of that court's findings. Clearly the party not appealing can obtain no advantage in this court which he failed to receive in the district court, yet this does not mean that we, upon appeal, must affirm the district court only on the theory adopted by it. This court may sustain the district court regardless of its findings and theories."

In other words, the appeal is from the judgment, and not from the findings of the district court.

Therefore, the propositions argued by the plaintiff and the intervenor in the district court will now be considered, in addition to the points argued by the appellant in this court.

I. It is said by the plaintiff and the intervenor that the ballot submitted to the electors of the town of Manning did not contain the entire public measure.

While the public question need not be set forth on the ballot *"in haec verba"* (O'Keefe v. Hopp, 210 Iowa 398, local citation 405, 228 N. W. 625, 628), yet enough shall appear at least to clearly indicate the proposition which is being submitted to the electors. Lee Electric Co. v. City of Corning, 199 Iowa 680, 202 N. W. 585; McLaughlin v. City of Newton, 189 Iowa 556, 178 N. W. 540; O'Keefe v. Hopp, supra. See sections 761, 762, and 763 of the 1931 Code.

Consequently it is argued by the plaintiff and the intervenor that the ballot in question should have contained, in addition to its subject-matter, the following: First, whether the plant is to be paid for out of past or future earnings; second, whether the municipality is to contract to pay all or part of the costs from future earnings; third, whether the municipality is to pledge the plant and its earnings; fourth, the maximum rate to be charged consumers, including the municipality; and, fifth, the rate of interest to be charged the municipality. According to the ballot under consideration, it is clear that the municipality was attempting to establish its electric plant under sections 6134-d1, 6134-d2, and 6134-d3 of the 1931 Code. These sections read as follows:

"6134-d1. They [cities and towns] shall have power to pay for any such plant [electric], improvement or extension thereof out of

the past earnings of the plant and/or out of the future earnings and/or may contract for the payment of all or part of the cost of such plant, improvement or extension out of the future earnings from such plant, and may secure such contract by the pledge of the property purchased and the net earnings of the plant.

"6134-d2. Such contract shall not constitute a general obligation or be payable in any manner by taxation. Such contract shall specify the maximum rate that may be charged the consumers, including the municipality, and the city shall not increase or fix any rate beyond such maximum. Under no circumstances shall the city be in any manner liable by reason of the failure of the net earnings being sufficient for the payments provided in the contract. Such contract shall also specify the rate of interest to be charged.

"6134-d3. Nothing contained in the last two preceding sections [6134-d1 and 6134-d2] shall be construed as authorizing an establishment of a plant without an election as required by section 6131. And such proposition when submitted to an election shall state the maximum amount which may be expended for the establishment, construction, or acquisition of such plant."

The sections of the 1931 Code, just quoted, appear in chapter 312 thereof. Contained in that chapter are also sections 6127 and 6131. Section 6131 is referred to in section 6134-d3, above set forth. In sections 6127 and 6131 are the following provisions:

"6127. Cities and towns shall have the power to purchase, establish, erect, maintain, and operate within or without their corporate limits, heating plants, waterworks, gasworks, or electric light or power plants, with all the necessary reservoirs, mains, filters, streams, trenches, pipes, drains, poles, wires, burners, machinery, apparatus, and other requisites of said works or plants, and lease or sell the same.

"6131. No such works or plants shall be authorized, established, erected, purchased, leased, or sold, or franchise granted, extended, renewed, or amended, or contract of purchase provided for in the preceding section shall be entered into unless a majority of the legal electors voting thereon vote in favor of the same."

What, then, in view of the foregoing legislation, is the proposition to be submitted to the electors of the town of Manning, under section 6134-d3 of the 1931 Code? Under section 6127, above men-

tioned, the city may establish and erect an electric light and power plant, but, before the city council may exercise that power, the erection and establishment must be authorized by an election of the people, as indicated by section 6131. If the proposition contemplated by sections 6127 and 6131 were to be submitted to the people, the proposition would be first whether the city shall erect and establish an electric light or power plant. But that would only be part of the proposition, because under section 6239 of the 1931 Code, it is provided that "cities and towns when authorized to acquire the following named public utilities and other improvements may incur indebtedness for the purpose of: 1. Purchasing, erecting, extending, reconstructing, or maintaining and operating waterworks, gasworks, electric light and power plants, or the necessary transmission lines therefor, and heating plants. * * * " That power, however, is limited by section 6241, which provides: "No such indebtedness shall be incurred until authorized by an election." And section 6245 outlines what must be contained upon the ballot for such an election.

In the case at bar, however, the council of Manning sought to erect and establish the plant, not by incurring a general indebtedness, contemplated by section 6239 of the Code, but rather through the method outlined by sections 6134-d1 and 6134-d2 of that Code. The erection and establishment of a plant under the last-named sections would not incur a general obligation, nor would the cost be payable in any manner by taxation. So, generally speaking, at the election under sections 6127 and 6131, the proposition would be, first, shall the plant be established; and, second, shall the indebtedness be incurred as anticipated by sections 6239 and 6241 of the Code, or shall the property be otherwise paid for? On the other hand, however, when an election is held under sections 6134-d1, 6134-d2, and 6134-d3, the proposition would be, generally speaking, first, whether a plant shall be constructed without a general indebtedness and with no obligation payable in any manner by taxation; and, second, what will be the maximum cost thereof? There is no other proposition, generally speaking, to be submitted to the electors. An elector is entitled to know, generally speaking, first, is an electric plant to be built? and, second, is an indebtedness to be incurred therefor payable by taxation, or shall the plant be paid from the earnings without a general indebtedness payable by taxation, or shall the property be otherwise paid for? Everything depends, of

course, upon the facts and circumstances of the case. For instance, in McLaughlin v. City òf Newton (189 Iowa 556, 178 N. W. 540), supra, a special contract was involved. The contract under the facts of that case constituted the proposition, and accordingly it was held that the ballot should contain the entire public measure. Again, in O'Keefe v. Hopp (210 Iowa 398, 228 N. W. 625), supra, there was involved, among other questions, the one relating to the contents of the ballot used at a special election purporting to authorize Pottawattamie county to construct a bridge over part of the Missouri river. Section 4681 of the 1927 Code provided:

"If a majority of the voters vote in favor of such authorization [the building of a bridge over a boundary stream] the board shall have authority to construct and maintain said bridge, and may agree with the adjoining state, or with any other municipal division thereof, as to what part of said bridge said county will construct and maintain, or as to what percentage of the cost of construction and maintenance said county shall pay; and such county shall be under no greater liability than as evidenced by such agreement."

Under the proceeding taken, however, in the O'Keefe case, it appeared that the county of Pottawattamie was not proposing to build an entire bridge, as apparently contemplated by the statute just quoted (by making this reference to section 4681 we do not now decide or suggest whether, in any event, an authorization could be made to build a portion of a bridge only across such boundary line river), but only a portion thereof. Consequently, the issue became more complicated, and the proposition to be submitted to the voters was therefore more involved. Nothing said in either the O'Keefe (210 Iowa 398, 228 N. W. 625), or McLaughlin (189 Iowa 556, 178 N. W. 540) cases would require the town of Manning, in the case at bar, to set out in full the contract for the construction of the plant, or the exact scheme of financing contemplated by sections 6134-d1 and 6134-d2. Authority for this conclusion is found in Hogan v. City of Corning, 217 Iowa 504, 250 N. W. 134. There it is said, by Mr. Justice Claussen:

"The matters which appellees insist should be printed upon the ballot will come into being another day. Under the law the contract will be the product of the future. Neither the contract nor its substance can be printed on the ballot before the contract exists.

It is contended that many details of the construction of the plant and the manner of its operation and methods of accounting, and manner of financing were essential elements of the ballot. Such matters, like the contract, will be products of the future."

That pronouncement in the Hogan case is sustained by sections 6134-d2 and 6134-d4 of the Code. Section 6134-d4 provides:

"Before any municipality shall enter into any such contract as provided in section 6134-d1, for the establishment of a plant, or for the extension or improvement of an existing plant, to cost five thousand dollars or more, the governing body proposing to make such contract shall give thirty days' notice of its intention to adopt proposed plans and specifications and proposed form of contract therefor, by publication once each week for two consecutive weeks in some newspaper of general circulation in the municipality and also in some newspaper of general circulation in the state of Iowa, the first publication of which shall be at least thirty days prior to the time of hearing fixed in said notice."

Section 6134-d6 of the Code provides, among other things, that after the notice of the proposed contract contemplated by section 6134-d4, the governing body of the town "shall consider the * * * form of contract. * * * " This all indicates that the town council shall adopt a form of contract consistent with the power authorized by the electors in permitting the council to build an electric plant, the cost of which shall not constitute a general obligation or be payable in any manner by taxation. The details of the contract are to be left to the council, as declared in Hogan et al. v. City of Corning et al., supra. It is true that in establishing the plant, the contract shall be let upon competitive bids, as provided in section 6134-d5 of the 1931 Code. Iowa Electric Light & Power Company v. Incorporated Town of Grand Junction, Iowa et al., 216 Iowa 1301, 250 N. W. 136.

Our conclusion is sustained by the history of sections 6134-d1 and 6134-d4. While the legislation was pending, many amendments were offered on the floor of the legislature. Both the House and the Senate attempted to require contracts to be submitted to a vote of the people. In each instance, the amendment was voted down. Clearly, it is indicated by the voting down of these amendments that the legislature did not contemplate that the contract should be

submitted to a vote of the people. What has been said about the contract for the construction of the plant applies equally to the method of financing the plant under section 6134-d1. Hogan et al. v. City of Corning et al. (217 Iowa 504, 250 N. W. 134), supra. As before indicated, the elector is interested in knowing only whether the plant shall become a general indebtedness payable by taxation, or whether it is to be constructed from the earnings of the plant in such a way that the contract shall not constitute a general obligation against the city, or be payable in any manner by taxation or otherwise, as a general obligation of the city.

After the people, in accordance with section 6134-d3, have authorized a plant by their vote, the powers granted by section 6134-d1 are automatically conferred upon the city council. Every elector knows that if the proposition to establish the plant in the method outlined by sections 6134-d1 and 6134-d2 is carried, the council may finance the same under any method provided in section 6134-d1. Whether a mortgage on an existing plant or a contract to apply past earnings on the plant would constitute a general obligation, we do not now decide or suggest, for in the case at bar it is clear that the past earnings are not involved because the plant is being newly constructed. Likewise it is clear, therefore, that an existing plant is not being mortgaged. The purchase price of a new plant is involved. Consequently the proposition in the case at bar was fully stated in the ballot. This is true whether, for convenience, the city issues what is designated as pledge warrants or not, because such pledge warrants, so far as the record reveals, are strictly in accordance with the contemplation of sections 6134-d1 and 6134-d2. Of course, the city in no event can exceed the powers granted by sections 6134-d1 and 6134-d2.

II. But the intervenor argues that the proposition submitted to the people is invalid because of duality. Reliance at this juncture is made upon Brown v. Carl, 111 Iowa 608, 82 N. W. 1033, Windsor v. City of Des Moines, 110 Iowa 175, 81 N. W. 476, 80 Am. St. Rep. 280, and Gray et al. v. Mount et al., 45 Iowa 591. Obviously those cases are not in point.

In the case at bar there was no confusion in the proposition submitted. Ambiguity did not exist on the ballot or in the notice. Section 6134-d3 provides:

"* * * And such proposition [the establishment of an

electric plant] when submitted to an election shall state the maximum amount which may be expended for the establishment, construction, or acquisition of such plant."

According to the ballot in the case at bar, authority was asked to establish, erect, maintain, and operate a municipal light and power plant. Following that subject-matter, it is stated on the ballot "that the maximum expenditure for the establishment thereof shall not exceed the sum of $135,000.00."

A complaint is made by the intervenor that the electors would not know whether the $135,000 were to be expended for the establishment, construction, or acquisition of the plant. Clearly, the proposition did not contemplate the acquisition, operation or maintenance of the plant. Nothing is said in the ballot about acquiring a plant. The ballot does suggest the establishment and the erection of a plant. Following that it is stated in the ballot that the establishment shall cost $135,000. Under the scheme here involved, the establishment was to be by the erection, and not by any other method. See Iowa Service Co. v. City of Villisca, 203 Iowa 610, 213 N. W. 401. There could not possibly be confusion under the circumstances. Plainly, then, there was no duality.

III. Furthermore, the contention is made by the intervenor that the election was not properly called. It is argued at this juncture that the proceedings for the election must have been instituted by the electors rather than by the city council of Manning. This contention is entirely overcome in Hogan et al v. City of Corning et al. (217 Iowa 504, 250 N. W. 134), supra. In that case it was argued that the election should have been called by the electors rather than by the city council, and we overruled the contention. A restatement of the discussion is not necessary here.

IV. Finally, it is argued by the plaintiff and the intervenor that the indebtedness incurred for the establishment of the electric light and power plant in Manning exceeds the constitutional limit of the indebtedness of that town. If the $135,000 necessary for the establishment of this plant were a general obligation of the town, there is no question that the constitutional limitation of indebtedness would be exceeded. But it must be remembered that the cost of the plant is analogous to a purchase price which, under section 6134-d2 of the Code, is not a general obligation payable in

any manner by taxation. Section 3, article XI, of the Iowa Constitution, provides:

"No county, or other political or municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount, in the aggregate, exceeding five per centum on the value of the taxable property within such county or corporation— to be ascertained by the last State and county tax lists, previous to the incurring of such indebtedness."

Section 6238 of the 1931 Code declares:

"No county or other political or municipal corporation shall become indebted in any manner for its general or ordinary purposes to an amount exceeding in the aggregate one and one-fourth per cent of the actual value of the taxable property within such corporation. The value of such property shall be ascertained by the last tax list previous to the incurring of the indebtedness."

Section 6240 of that Code supplements the foregoing with the following:

"No indebtedness for the extraordinary purposes mentioned in the preceding section [6239, relating to the erecting of an electric light and power plant] shall be charged against or counted as a part of the one and one-fourth per cent available for general ordinary purposes until the other three and three-fourths per cent of the five per cent of indebtedness permitted by the constitution has been exhausted."

As previously indicated, the question to be determined here is whether the cost of the electric plant under consideration is a debt within the contemplation of the constitutional and statutory prohibition. If it is such a debt, it exceeds the limitation. According to section 6134-d2, the cost of the electric plant financed under section 6134-d1 shall not constitute a general obligation or be payable in any manner by taxation, or in any other way except through the earnings of the plant.

"Under no circumstances shall the city be in any manner liable by reason of the failure of the net earnings being sufficient for the payments provided in the contract." Section 6134-d2.

Many definitions may be found for the word "debt". Much

depends upon the facts and circumstances under which it is used. To illustrate the thought, an excerpt is quoted from 17 Corpus Juris, pages 1371 and 1372:

"Judicial definitions of the term 'debt' are numerous. It is a common-law word of technical meaning. It has not, however, a fixed or invariable signification, but has several recognized meanings, which vary greatly, according to the subject matter and the language in connection with which the word is used. It is used in different statutes and constitutions in senses varying from a very restricted to a very general one."

Our court, in the case of Swanson v. City of Ottumwa, 118 Iowa 161, reading on page 170, 91 N. W. 1048, 59 L. R. A. 620, discussed the meaning of the word "debt". There it is said:

"Given its plainest and most literal signification, the word 'indebtedness' includes every obligation by which one person is bound to pay money, goods, or services to another. Webster's Dictionary. 'Debt'. Such is undoubtedly the meaning of the word in the common usage of English-speaking people, and there are not wanting authorities which extend it to mere moral obligations arising from contracts unenforceable at law. Mayor, etc., v. Gill, 31 Md. 375. As applied to a municipal corporation, 'debt', if given its broadest signification, would include not only obligations for extraordinary expenditures, but every outstanding warrant upon the treasury, the accruing salaries of officers, and expenses daily arising for water supply, street lighting, street repairs, and other like legitimate purposes. It can be readily seen that such rigid literal interpretation of the word in construing the constitutional provision would completely paralyze municipal power in every city whose debt has reached the prescribed limit, and, while courts have propounded the general proposition that the language of the constitution in this respect is 'exceedingly broad, and should have no narrow or strained construction' (French v. City of Burlington, 42 Iowa 614), and must be given 'its fair and legitimate meaning and general acceptation' (Grant v. City of Davenport, 36 Iowa 401; City of Springfield v. Edwards, 84 Ill. 626), a careful examination of the decisions discloses the fact that in substantially every jurisdiction the word 'debt' or 'indebtedness', as used in the limitation placed upon municipal power, is given a meaning much less broad and comprehensive than it bears in general usage."

In the Swanson case, the city of Ottumwa attempted to establish a waterworks system under section 745 of the 1897 Code, as amended by chapter 23, Acts of the Twenty-seventh General Assembly. That provision was:

"Cities levying such sinking fund tax [that provided in section 744 of the 1897 Code, authorizing the purchase or erection of waterworks and providing for a sinking fund to pay for the same] are hereby authorized to contract for the purchase or erection of waterworks, and, upon the approval and adoption of such contract as hereinafter provided, to apply such sinking fund upon the cost thereof, and cities so purchasing or constructing and those now owning such waterworks are authorized to pledge the proceeds of the continuing two-mill levy provided for in this chapter, and the regular water levy and the net revenues derived from the operation of the waterworks, and *shall have the right to mortgage or bond such works*, to secure the payment of the purchase price or the cost of constructing such waterworks, but no part of the general fund of such cities shall be applied upon such contracts, bonds or mortgages. In the payment thereof, the city and holders of said contracts, bonds or mortgages shall be restricted to the proceeds of the said taxes and the net revenues of the said waterworks, as hereinbefore provided; and such contract or bonds shall not bear a higher rate of interest than five per cent per annum, payable semi-annually." (Italics are ours.)

It was said by Swanson, the taxpayer, that the foregoing scheme exceeded the constitutional limit of indebtedness, and, as a matter of fact, it would have exceeded that limit had the method of paying for the waterworks constituted an indebtedness as contemplated by the Constitution and the statutory provisions. But this court held that the indebtedness proposed by the scheme under consideration there was not one prohibited by the Constitution and statutes. A painstaking and thorough discussion was made in that case by Mr. Justice Weaver. Because that case, by analogy at least, is decisive of the case at bar, we make generous quotations therefrom. On page 188 of the opinion it is said:

"The statute expressly authorizes the appellant city to construct waterworks. It also authorizes the creation of a special fund from which the expense of such works shall be met. It exempts

the city and its general revenues from all liability for such expense. The city has formally accepted the terms of the statute, and let the contract for the construction of the works. The special fund authorized by the statute has been duly created."

We there held that the limited obligation was not an indebtedness within the meaning of the Constitution and statutes fixing the limit of indebtedness for municipalities. That is true because the legislation expressly provided that the cost of the waterworks should not be a general indebtedness.

Then on page 189, the discussion is continued as follows:

"What is 'plain and obvious' to one mind is not always equally clear to another, and the fact is no impeachment of the 'common sense' of either. The wide difference of views manifested in the authorities we have mentioned demonstrates that 'debt' is no exception to this rule. Were we to give the word the broad significance that some of the authorities would justify, we should destroy the corporate life and efficiency of every municipality which reaches the allowed limit of indebtedness. But the construction we give it has strong support in the decisions of the courts of other states, is in strict line with the opinion we have heretofore frequently expressed, and preserves the integrity of the constitution according to its evident meaning and intent, while entailing no disastrous consequences to the city or to its citizens. The right of a city to construct and own works of public utility, if such rights exist, is one of great importance, and should not be embarrassed or rendered nugatory by strained or technical construction of the constitution or of the statutes. * * * It is further said that the giving of a mortgage, as provided in this case, is in itself an evidence of indebtedness, and we are cited to the case of City of Joliet v. Alexander, 194 Ill. 457, 62 N. E. 861. The authority of that decision upon the question there decided may be conceded without in any manner modifying the opinion we have expressed. * * * In the case before us the mortgage is essentially a purchase-money mortgage. It covers no property already owned by the city, and in no manner involves the city in liability to lose any item of property or of income owned or held by it at the execution of such instrument. It must, therefore, be regarded as an exception to the general rule that a mortgage implies a debt upon the part of the mortgagor."

See, also, Rowley v. Clarke, 162 Iowa 732, 144 N. W. 908.

Likewise see Winston v. City of Spokane et al., 12 Wash. 524, 41 P. 888; Burnham v. City of Milwaukee, 98 Wis. 128, 73 N. W. 1018; Faulkner v. City of Seattle, 19 Wash. 320, 53 P. 365.

The conclusion just reached is not in any way modified by the fact that the city may have a future liability in the case at bar because of a possible tort growing out of the transaction. Fort Dodge Electric Light & Power Co. v. City of Fort Dodge et al., 115 Iowa 568, 89 N. W. 7. If, then, under the legislation involved in the case of Swanson v. City of Ottumwa (118 Iowa 161, 91 N. W. 1048, 59 L. R. A. 620), supra, the limited obligation was not one within the constitutional and statutory limitations because the indebtedness was not general, likewise in the case at bar the cost of the electric light and power plant under sections 6134-d1 and 6134-d2 of the Code is not an indebtedness under the constitutional or statutory limitation. This is true because the indebtedness contemplated by sections 6134-d1 and 6134-d2 is expressly declared not to constitute a general obligation or be payable in any **manner** from taxation, or in any other method, except that provided in said sections. Also, section 6134-d2 expressly provides that under no circumstances shall the city in any manner be liable by reason of the failure of the net earnings being sufficient for the payment provided in the contract. No taxpayer, therefore, could ever be called upon to pay taxes to discharge the obligation. Neither could the obligee call upon the city to discharge such obligation, except in the limited manner provided. With one exception, the obligee could never levy upon the city's property or take the same from it to discharge the obligation. The exception just mentioned is that the property purchased may be pledged for the purchase price under section 6134-d1 of the Code. Such was the situation, however, in the Swanson case, and nevertheless this court held that the obligation thus secured by a mortgage was not an indebtedness within the constitutional or statutory limitations. What the situation might be were the municipality attempting to mortgage or pledge property already owned, we do not now decide or suggest. By using the pledge warrants contemplated in the case at bar, the city of Manning does not extend the obligation beyond that limited by sections 6134-d1 and 6134-d2 of the 1931 Code. Therefore, the cost of the electric plant under consideration is not within the constitutional or statutory limitation of indebtedness.

Wherefore, the district court should not have enjoined the town

of Manning from proceeding to establish the plant in accordance with the statute, and the judgment and decree of the court below should be, and hereby is, reversed.—Reversed.

All Justices concur, except EVANS, J., who takes no part.