IOWA SERVICE COMPANY, Appellant, v. CITY OF VILLISCA et al.,
Appellees.

**MUNICIPAL CORPORATIONS: Public Utilities—Authorization—Peti-
1 tion—Sufficiency.** A statutory provision that a petition for an elec-
tion to vote authorization for a public utility shall state that such
plant cannot be "purchased, erected, built, or furnished" within the
limits of a certain percentage on the property valuation is complied
with by stating that such plant cannot be "established" within the
limit of such percentage, it appearing that no such plant then existed
within the municipality.

**MUNICIPAL CORPORATIONS: Public Utilities—Bonds—Application
2 Without Sale.** A city which offers for sale bonds voted for the erec-
tion of a public utility and receives no bids may not thereupon enter
into a contract which provides that the contractor shall receive the
bonds at par in payment of the contract price.

Headnote 1:   28 Cyc. p. 1590.   Headnote 2:   28 Cyc. p. 1597 (Anno.)

*Appeal from Montgomery District Court.*—J. S. DEWELL, Judge.

APRIL 5, 1927.

Suit in equity, to enjoin the defendant city from perform-
ance of a certain contract entered into for the construction of an
electric light and power plant for the municipality. The legal
validity of said contract is challenged. The trial court dismissed
the petition, and the plaintiff appeals.—*Reversed.*

*George A. Lee* and *Hysham & Billings,* for appellant.

*Kennedy, Holland, De Lacy & McLaughlin, G. L. De Lacy,
Dressler & Neely,* and *Kimball, Peterson, Smith & Peterson,* for
appellees.

EVANS, C. J.—The plaintiff brings its action as a taxpayer.
Its real interest in the litigation, however, is somewhat deeper.
It owns and operates in the city of Villisca a distributing system
for electric light and power. This system consists in the main of
poles and wires. There is no power plant established in said

city. At an election called for the purpose, the electors of the city voted to incur an indebtedness for the establishment of a light and power plant for the municipality, and voted to issue bonds therefor in the sum of $75,000. The plaintiff has sought, without success, to sell to the city its distributing system, in order that it may be incorporated as a part of the new enterprise.

Pursuant to the vote of the electors, the city council caused bonds to be issued to the amount of $75,000, and placed the same in the hands of the treasurer, as required by statute. The bonds were advertised for sale in the manner required by statute, but no bids were obtained thereon. The obvious reason for this failure was that this suit had been instituted and was pending at the time of the offer for sale. Thereafter, the city council entered into a contract with certain constructing contractors to construct for the municipality the requisite light and power plant. This contract provided that the bonds in question should be delivered to the contractor at par, in payment of the contract price.

The petition of plaintiff challenged (1) the legality of the election at which the bonds were voted, and (2) the legality of the contract entered into with the contractors.

I. The first challenge was grounded upon the insufficiency of the petition signed by the electors for the call of the election.

Section 1306-c of the Code Supplement of 1913, as amended by Chapter 303, Acts of the Thirty-seventh General Assembly, and Chapter 250, Acts of the Thirty-eighth General Assembly,

1. Municipal Corporations: public utilities: authorization: petition: sufficiency.

provided the initial procedure then in force. This required that a petition be presented to the city council, signed by a majority of the qualified electors, ''stating the purposes for which the money is to be used and that the necessary waterworks, electric light and power plants, or the necessary transmission lines therefor, gasworks, or heating plants, cannot be purchased, erected, built or furnished within the limit of one and one-quarter per centum of the valuation.''

The petition actually filed before the city council did not state that a power plant could not be ''*purchased, erected, built, or furnished* within the limits of the one and one-quarter'' mill levy. It did state that such a plant could not be *established*

within such limit. The argument .is .that. the word :''established'' is not the legal equivalent of ''purchased, erected, built, or furnished.'' Other sections of the statute covering this subject do use the word ''establish'' interchangeably with the words above quoted. We think the point is without merit, and that the word ''established'' was the legal equivalent of the other words contained in the statute. Appellant lays particular emphasis upon the absence of the word ''purchased.'' The idea suggested is that, if the voters or the city council knew that the plaintiff's distributing system could be purchased, it might have made a difference in the result of the vote. There was in fact no *power plant* in the city of Villisca. None, therefore, could be purchased there. To say, therefore, that the ''purchase'' should have been negatived by the petition is only to emphasize what is clearly vain. We think the election was valid; and likewise the bonds issued pursuant thereto.

II. The second point made by .the appellant is .that the contract entered into by the city council for the erection of the plant was illegal, in that the city council contracted thereby. to deliver the bonds to the contractors in payment of the contract price. The contract purported in terms to apply the bonds at par upon the contract price. Was this a violation of the statute which relates to the disposition of such bonds?

2. MUNICIPAL CORPORATIONS: public utilities: bonds: application without sale.

The bonds having been once offered for sale in accordance with the requirements of the statute, the treasurer had a right thereafter under the statute to sell the same · at · par, with accrued interest, and not otherwise. Any other method of disposition became, under the statute, a misdemeanor, punishable as such. The contention for the appellant is that this contract amounted to a mere barter of the bonds, and that they were thereby merged into the conditions of the contract, and that no one could say whether the city realized par therefor or not. The contention for the appellee is that the disposition of these bonds in good faith for a full consideration was in every legal sense a sale thereof at par.

Chapters 319 and 320 of the Code of 1924 must be read together on this subject. The relation between the two chapters is clearly indicated by Section 6264. When bonds have been issued by a resolution of the city council, it is provided by Sec-

tion 6256 that they shall be delivered to the treasurer, who shall register the same. It is provided by Section 6257 that the treasurer shall make monthly reports "of all such bonds sold or exchanged by him since his last report."

Section 6258 provides:

"The council may provide by resolution for the exchange of such bonds or any part thereof, for legal indebtedness of the city or town evidenced by bonds, warrants, or judgments which were outstanding when the resolution authorizing such bonds was passed; or said council may by resolution order said bonds sold as provided by law for the sale of public bonds."

With these statutes before us, we may proceed to consider the respective contentions of counsel. The contention of appellant is that by these provisions of the statute the treasurer was bound to sell these bonds for money or its equivalent, and that he had no power to dispose of them otherwise. The contention of the appellee-defendants is grounded upon the following broad proposition of their brief:

"Any transaction whereby property is parted with for a valuable consideration, whether there be a money payment or not, provided the bargain is made and the value measured in money terms, and paid or agreed to be paid in something which the parties agree to treat as a specified amount of money, is a sale."

What is a "sale" is a question which has much flexibility, and may be answered variably, in accord with the particular circumstances surrounding the transaction under consideration. There is a certain broad sense in which the term "sale" may be applied to any transaction, even though it involve an exchange of properties, where the specific money value of each article is mutually agreed upon. Such transactions are usually those had between persons who are sui juris, and who have plenary authority to deal with each other, and who are unhampered in such dealing by the limited scope of an agency or by a limited official power. It is a trite illustration of this distinction that an agent who has power only to sell may accept no other consideration than money or its equivalent. Such is the primary and the literal meaning of the word "sell." Such is the meaning usually ascribed to it when a question of power or authority is involved. Authority of an agent or official is not presumptively expanded

to conform to the broader sense of the term herein first suggested. If we turn to the statute, Section 6258, it will be noted that it deals specifically with the question of an exchange of bonds. The word "exchange" is there used in a sense which differentiates it from a sale, within the contemplation of the statute. It will be noted that such power of exchange is limited, and that such bonds can be exchanged only for an indebtedness which was "outstanding when the resolution authorizing such bonds was passed." The specific power thus conferred negatives any power of exchange of the bonds for any other purpose. The alternative is stated in the concluding clause of this section: "Or said council may by resolution order said bonds sold as provided by law for the sale of public bonds." The contract under consideration, which purported to dispose of the bonds to the contractors, was not an indebtedness *outstanding* when the bonds were issued. This being so, the city council had no alternative other than that stated in the concluding clause of that section. The reason for such limitation upon official power is quite manifest. The bonds had failed to sell for par. Whether the contractors expanded their bids in their estimates or discounted the bonds cannot be known. What is certain is that they did not buy the bonds at par. That opportunity had been offered to all the world, without a bidder. The statute limits the power of exchange to indebtedness already liquidated. Such indebtedness is itself a par. The exchange of the bonds, therefore, is an exchange of par for par. This cannot be said of a contract entered into which contemplates the acceptance of the bonds in payment for material and labor proposed to be furnished. We are not unmindful of the authorities cited and relied on by the appellee wherein such an exchange of bonds has been sustained by the courts as a substantial equivalent to a sale and application of the proceeds. In none of the cited cases was there any transgression of the limitation of the statutory power. In some of them decision is put upon the fact that there was no such limitation, and that the officials acted within the discretion conferred by the statute. Some of the cited cases involve statutes which authorize municipalities to vote bonds in aid of public enterprises, such as railroads. The bonds were to be sold, and proceeds were to be turned over to the public enterprise. In some of these cases, the bonds themselves were delivered. In

such a case, breadth and length were equal, and nothing was to be gained by the formalities of sale for the sole purpose of delivering the proceeds to the corporation.

More recent cases cited by the appellee are *Ledwith v. City of Lincoln*, 110 Neb. 425 (193 N. W. 763); *Washington-Oregon Corp. v. City of Chehalis*, 76 Wash. 442 (136 Pac. 681). The first cited case is not helpful to the appellee, in that the court condemned therein a contract quite similar to the one before us. In the Washington case, decision was predicated upon the statute, which conferred upon the municipal authorities a broad discretion to dispose of the bonds in such manner as they "shall deem for the best interests of the city." Our statute is the very converse of that. It not only withholds discretion, but it imposes definite limitations upon official power.

We reach the conclusion that, under our statutes, there was no power to barter or to exchange the bonds except for the purpose stated in Section 6258. In the absence of such an exchange, the treasurer was bound to sell upon the terms prescribed by the statute, and to realize the money thereon. If the bonds could not be thus disposed of, no power is conferred by statute upon any officer to make any other disposition thereof. The bonds being once disposed of in accordance with statutory terms, the city council would then be in a position to deal with their contractors upon a cash basis, so far as the consideration to be paid was concerned.

To recapitulate: We overrule appellant's challenge to the legality of the election. The election was legal, and the bonds issued pursuant thereto are valid.

Appellant's challenge to the legality of the contract, in so far as it involves the exchange of the bonds, is sustained.

The decree of the district court is, accordingly, reversed.— *Reversed.*

STEVENS, FAVILLE, and VERMILION, JJ., concur.