IOWA ELECTRIC COMPANY, Appellant, v. TOWN OF CASCADE et al., Appellees.

No. 45020.

NOVEMBER 21, 1939.

REHEARING DENIED MARCH 9, 1940.

Rex H. Fowler, Don Barnes, and Edward D. Hogan, for appellant.

Czizek & Czizek and E. J. Kean, for appellees.

MILLER, J.—This suit is brought by the Iowa Electric Company, a corporation, which alleges that it has a franchise for the furnishing of electric current in the town of Cascade, which will expire May 22, 1940, and that it is a taxpayer in the town of Cascade. Plaintiff seeks to enjoin the construction of a municipal electric light and power plant, construction of which was approved by the electors of the town of Cascade at a special election. The cost of improvement was not to exceed

$100,000, and was to be paid out of earnings, pursuant to the Simmer law. Code 1935, §6134-d1 et seq.

The Federal Emergency Administrator of Public Works, upon application by the town, offered to make a grant of 45 per cent of the cost of the project, which offer was accepted. One of the conditions of the grant was that the town establish certain minimum rates of wages to be paid employees engaged upon the project, which rates were to be determined "in accordance with rates prevailing for work of a similar nature in the locality in which the project is to be constructed", and were to be submitted to, examined and approved by the state director. The town adopted a resolution establishing such minimum rates and provided in the specifications for the project, that the wages to be paid such employees should be not less than the rates so fixed. Three contracts were let, each of which obligated the contractor to comply with such provision of the specifications.

Numerous grounds were asserted by the plaintiff in its petition for injunction, but the sole contention, upon which reversal is sought in this court, is that "the adoption by the town council of the minimum wage scale constituted such an interference with free and open competitive bidding upon said project as to render the proceedings void."

There was testimony introduced to the effect that the wage scales, paid in the town of Cascade, were substantially lower than the minimum rates fixed by the specifications. There was also testimony that the town council, in its study preliminary to the fixing of minimum wage rates, determined that the labor supply in Cascade was insufficient to satisfy the needs of the project. There was testimony to substantiate this conclusion. The contractors testified that the schedule of minimum wage rates did not in any manner tend to increase the bids submitted by them, but one of them conceded that the requirement increased the labor bill. It was also shown that the cost of the labor, affected by the schedule, represented 15 to 20 per cent of the total cost of the improvement. We are of the opinion that the trial court properly found for the defendants under the facts herein.

█ This court has expressly recognized that in this state a municipal corporation possesses only such powers as are con-

ferred upon it by the legislature. In the case of Van Eaton v. Town of Sidney, 211 Iowa 986, 989, 231 N. W. 475, we state:

"A municipality is wholly a creature of the legislature, and possesses only such powers as are conferred upon it by the legislature: that is, (1) such powers as are granted in express words; or (2) those necessarily or fairly implied in or incident to the powers expressly conferred; or (3) those necessarily essential to the identical objects and purposes of the corporation, as by statute provided, and not those which are simply convenient. 1 Dillon on Municipal Corporations (5th Ed.), Section 237; Clark v. City of Des Moines, 19 Iowa 199; City of Clinton v. Cedar Rapids & M. R. R. Co., 24 Iowa 455; Heins v. Lincoln, 102 Iowa 69; State ex rel White v. Barker, 116 Iowa 96; State ex rel County Attorney v. Des Moines C. R. Co., 159 Iowa 259; Merrill v. Monticello, 138 U. S. 673 (34 L. Ed. 1069)."

This court has also recognized that, under the Simmer law, an improvement such as here contemplated should be contracted for on a basis of competitive bidding. In the case of Iowa Electric Light & Power Co. v. Town of Grand Junction, 216 Iowa 1301, 1303, 250 N. W. 136, 137, after quoting sections 6134-d4 and d5 of the Code, we state:

"This statute was undoubtedly enacted for the purpose of obtaining competitive bidding and to enable municipal corporations to secure the best bargain for the least money. Such a statute clearly required competitive bidding. McQuillin on Municipal Corp. (2d Ed.) vol. 3, section 1309; Colorado Central Power Co. v. Municipal Power Dev. Co. (D. C) 1 F. Supp. 961, 965 and 966; Lee v. City of Ames, 199 Iowa 1342, 203 N. W. 790; Urbany v. Carroll, 176 Iowa 217, 157 N. W. 852; Rhodes v. Board of Public Works of Denver, 10 Colo. App. 99, 49 P. 430, on page 434; 65 A. L. R. 837 note; Chicago Sanitary District v. McMahon & M. Co., 110 Ill. App. 510."

Appellant cites and relies upon numerous decisions which hold that insertion in the specifications of a minimum wage scale such as here attempted is beyond the power of a city, where the city is obligated to contract on the basis of competitive bidding, because such a provision tends to destroy competi-

tive bidding. However, to intelligently apply the rule of such cases, it is necessary to understand the reasons for the rule.

In the case of Hillig v. St. Louis, 337 Mo. 291, 85 S. W. 2d. 91, 92, the court states:

"In this state it is well settled that charter provisions requiring that contracts for public work be awarded, upon a public letting, to the lowest responsible bidder, are intended to secure free and unrestricted competition among bidders, to eliminate fraud and favoritism, and to avoid undue or *excessive cost* which would otherwise be imposed upon the *taxpayer* or *property owner*. * * * As a corollary to the elementary principle just stated, our courts hold in general that where, in the letting of contracts for public work, restrictions or conditions are imposed upon bidders which tend to *increase the cost* of the work, such conditions and restrictions are violative of charter provisions requiring that the contract for the work be let to the lowest responsible bidder."

Again in the case of Bohn v. Salt Lake City, 79 Utah 121, 8 P. 2d. 591, 598, 81 A. L. R. 215, 227, appears the following statement:

"The expressed policy in the Bonneville Case [Bonneville Irrigation Dist. v. Ririe, 57 Utah 306, 195 P. 204] is but in harmony with the general doctrine that proposals for bids for certain municipal contracts to be let to the lowest responsible bidder are for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, and fraud in awarding contracts, and for the benefit of *taxpayers* to secure the best work and supplies at the *lowest price practicable*."

Again, 79 Utah 121, 8 P. 2d at page 603, 81 A. L. R. at page 235:

"Imposing a minimum wage in proposals for bids and in contracts let and to be let has a direct tendency to influence competitive bidding and impair the very purpose of submitting proposals—the policy here pursued and threatened to be pursued by the city—to obtain contracts on terms at the most reasonable, economical, and practical cost and to the advantage of the *taxpayers* in having the work *economically* done."

In the case of Wilson v. Atlanta, 164 Ga. 560, 139 S. E. 148, the syllabus prepared by the court states as follows:

"A municipal corporation, though not required by the charter to let contracts for a public work to the lowest bidders, and though clothed as to such matters with the broadest discretionary powers, has no authority to adopt an ordinance prescribing a fixed scale of wages that shall be paid for all public work of the city. Such an ordinance by the city of Atlanta is ultra vires and illegal, because it tends to encourage monopoly and defeat competition, and also tends to put a *heavier* burden upon the *taxpayers* than they would have to bear if free competition were allowed; and all contracts made in pursuance thereof are void. City of Atlanta v. Stein, 111 Ga. 789, 36 S. E. 932, 51 L. R. A. 335; Green v. City of Atlanta, 162 Ga. 641, 652, 135 S. E. 84."

Under the record herein, there is no dispute but that the provisions of the Simmer law were fully complied with in regard to competitive bidding, except for the fact that the specifications called for a minimum rate of hourly wages to be paid certain classes of employees to be employed on the project. This provision tends to increase the labor costs. But this is the only element, shown by the record herein, which could call for a condemnation of the ordinance and the specifications of the contract, as tending to prevent competitive bidding. In all other respects, the procedure followed was consistent with the purpose of the rule to eliminate fraud and favoritism, discourage monopoly and encourage competition. The only plausible argument in support of appellant's position is that, since the rates are fixed higher than the rates paid local laborers, the *labor cost* was *increased,* and this might have a tendency to prevent the awarding of the contract in such a way as to avoid undue and excessive costs, guard against improvidence, extravagance and unnecessary burdens to the taxpayers, and obtain terms at the most reasonable, economical and practical costs to the *advantage* of the *taxpayer* in having the work *economically* done. In fact, appellant practically concedes as much. In their brief and argument, counsel state:

"When a contract for the construction of a municipal electric light and power plant is let under the provisions of the Simmer law, free and open competition among bidders is required to the end that the municipality may receive the *best* bargain for the *least* money."

The difficulty with appellant's position under the record herein lies in the fact that the total labor cost did not exceed 20 per cent of the cost of the improvement and the provisions in the specifications for a minimum scale of wages was inserted as a condition precedent to the securing from the federal government of a grant of 45 per cent of the cost of the improvement.

Section 10188 of the Code authorizes municipal corporations to accept gifts and provides that "conditions attached to such gifts or bequests become binding upon the corporation * * * upon acceptance thereof." This court has expressly recognized, in the cases of Abbott v. Iowa City, 224 Iowa 698, 277 N. W. 437; and Keokuk Waterworks Co. v. Keokuk, 224 Iowa 718, 277 N. W. 291, that section 10188 of the Code authorizes municipal corporations to accept the very kind of grant which was here offered to the town of Cascade. We are of the opinion that this section of the Code not only authorized the city to accept the grant, but also, under the record herein, authorized it to comply with the requirement in regard to minimum wage rates as a condition precedent to the securing of the grant. Since the grant was over twice the amount of the total labor cost on the project, the provision in the specifications for the payment of a minimum wage scale could not possibly be considered as having increased the cost to the users of electricity. The reason for the application of the rule, for which appellant contends, is absent. The court was warranted in refusing to apply the rule herein, and in holding that the town could comply with the condition that was attached to the grant.

While this court does not appear to have passed upon the exact proposition here presented, it did consider a situation somewhat analogous in the case of Diver v. Keokuk Savings Bank, 126 Iowa 691, 102 N. W. 542, 3 Ann. Cas. 669. In that case, the validity of a paving contract was challenged because the specifications limited the contractor in his right to employ help and purchase materials. Passing upon this proposition, we state, 126 Iowa at page 699, 102 N. W. at page 545, 3 Ann. Cas. 669, as follows:

"The provisions as to what laborers should be hired, and as to where material should be purchased, were, no doubt,

invalid. But the evidence affirmatively shows that they did not in any manner increase the cost price of the work. This being true, the plaintiff having made no objection to the contract until after the work was done, she is in no position, after having received the benefits of the contract, to object thereto.''

Counsel for appellant contend that the controlling feature of the case was the fact that objection was not made until after the work was done. We think the language used is also subject to the interpretation that the fact that the cost of the improvement to the taxpayer was not increased was a persuasive factor in the determination of the question presented.

Counsel for appellee strenuously insist that appellant had no right to maintain the proceedings herein. In view of the result reached by us, it is unnecessary to either discuss or decide that question.

The decree was right. It is affirmed.—Affirmed.

OLIVER, C. J., and MITCHELL, HAMILTON, BLISS, HALE, STIGER, and RICHARDS, JJ., concur.