JACOB M. WEISS et al., Appellants, v. INCORPORATED TOWN OF
WOODBINE et al., Appellees.

No. 45463.

JANUARY 14, 1941.

Lee & Sheldahl and Frank P. Brennan, for appellants.

George A. Rice and W. L. Hassett, for appellees.

GARFIELD, J.—At a special election held on April 28, 1939, the town of Woodbine was authorized to erect an electric light and power plant at a cost of not to exceed $115,000, to be paid for out of future earnings of the plant in accordance with the provisions of the Simmer Law (sections 6134.01 to 6134.11, Code, 1939). Thereafter, the town advertised for bids for the construction work and a contract was entered into with Fairbanks-Morse & Company for the building of the plant. Weiss and Hardwick, as citizens and taxpayers, and the Iowa-Nebraska Light & Power Company, as a taxpayer and franchise holder, brought suit to enjoin the construction of the improvement. This suit came before this court, which held the contract invalid because unreasonable restrictions on competitive bidding were imposed by the town. See Weiss v. Woodbine, 228 Iowa 1, 289 N. W. 469.

Following the above decision, and on or about July 1, 1940, the town again caused plans and specifications to be filed. Bids were advertised for and received and on August 5, 1940, a contract was again let to Fairbanks-Morse & Company for the construction of the plant at a cost of $101,516. The same parties then brought this suit seeking to have this second contract set aside.

The basis for appellants' case is that the contract provided, as stated in the notice for bids, that payment of the amount due the contractor should be made by delivery to it of revenue bonds of the town "at par plus accrued interest to the date of delivery, for the amount then due the contractor," which bonds were to be paid solely from the net earnings of the improvement.

Appellants' attack is twofold. First, it is contended, this transaction amounts to a "bartering of public bonds" which it is claimed is illegal. Second, it is urged that by requiring the contractor to take revenue bonds in payment for the plant, an illegal restriction was placed upon competitive bidding.

I. As to the first of these contentions, the statute, sec-

tion 6134.02, Code, 1939, after providing that, for the purpose of defraying the cost of any such plant as is here involved, a town may issue revenue bonds payable from the net earnings of the plant, contains the following:

"Such revenue bonds may be delivered to the contractor or contractors in payment for such improvement or they may be sold by the municipality and the proceeds used to pay for such improvement; and/or such bonds may be used as collateral security for money borrowed to pay the cost of such improvement, such loan to be repaid only out of the net earnings of the plant."

This provision of the statute seems plainly to authorize the municipality to deliver bonds to the contractor in payment for the plant. Appellants admit in argument that the town has a right to pay the contractor in bonds but argue that the statute requires the bids to be on a cash basis, "and the city might then deliver to the successful contractor, if the contractor be willing, revenue bonds in payment of the contract price." Apparently, counsel's thought is that the town must have advertised for bids on the basis that the contractor would be paid in cash and then when the work is completed induce the contractor to take his pay, not in cash, which he would have a right to expect, but in revenue bonds. It seems to us, however, that if the contractor is to be paid in bonds, the provision to that effect may as well be included in the contract and in the notice for bids as to have the town keep secret the mode of payment in bonds until time of payment arrives.

We do not feel called upon to determine whether a town can lawfully barter revenue bonds, nor whether this transaction amounts to the bartering of bonds. The statute (section 6134.02) authorizes the town to do precisely what it proposes to do in the way of delivering bonds to the contractor in payment for the improvement.

Code section 6134.05 provides:

"Sale of bonds—interest. Such revenue bonds shall not be sold for less than par, plus accrued interest," etc.

Code section 1175 reads:

"Selling price. No public bond shall be sold for less than par, plus accrued interest."

With regard to the above statutes requiring that bonds be not sold for less than par, the trial court in its decision concluded that section 6134.02 permitting delivery of bonds in payment of the contract is probably limited by the requirement that the bonds be not sold for less than par. Assuming, as we are inclined to believe, that the town was required to deliver the revenue bonds to the contractor at not less than par, appellants have failed to show that the town is to deliver, or the contractor accept, the bonds in question at less than par.

Furthermore, there is no evidence that the successful bidder raised its bid in any amount because it was to be paid in bonds rather than in cash. Indeed, there is no evidence in the record that any of the bidders submitted a larger bid by reason of the requirement that they be paid in revenue bonds rather than in cash.

Appellants contend that in view of the delay caused by this litigation, the length of time before the improvement is completed, and the uncertainty of the bond market in the future, there is no way of knowing that the bonds will be worth par at the time they are delivered to the contractor. There is also testimony to the effect that a responsible bond dealer would not now guarantee to pay par for bonds to be issued and delivered at such a future date. This falls short, in our opinion, of showing a violation either by the town or the contractor of the statutory requirement—assuming it to apply—that the bonds be disposed of at par by the town.

It must be remembered in this connection that appellants are invoking the power of a court of equity to set aside the contract in question because of claimed illegality. The burden of proof is upon them. Before they would be entitled to relief on the theory that the bonds are being disposed of at less than par, appellants must sustain the burden of proving that the transaction in question amounts to such a disposition of the bonds. In the absence of any showing to the contrary, the presumption would be that the officers of the town would comply

with the law in the making of the contract and the disposition of the bonds.

It is shown by the record that on August 2, 1940, Carleton D. Beh Company, bond dealer in Des Moines, offered to take revenue bonds from the town at par and accrued interest, plus a premium of $2,500 if delivery could be made within 30 days, and at a premium of $2,000 if delivery could be made within 90 days, provided the bonds were accompanied by an approving opinion of competent bond attorneys. The town was in no position to accept this offer, even if it had been disposed to do so, because of the threat of this litigation, the pendency of which would prevent approval of the bonds by attorneys. The Beh letter does not support appellants' claim that the transaction under attack involves the disposition of the revenue bonds at less than par.

But one Iowa case is cited by appellants in support of their claim that the transaction involves an illegal bartering of public bonds—Iowa Service Co. v. Villisca, 203 Iowa 610, 213 N. W. 401. These same appellants cited the Iowa Service Co. case in the previous suit of Weiss v. Woodbine, 228 Iowa 1, 289 N. W. 469. In the Weiss opinion, this court analyzed the Iowa Service Co. decision. We will not repeat the discussion there found except to observe that this court held the Service Company decision, fairly construed, did not support appellants' claim that under no circumstances could revenue bonds legally be delivered to the contractor in payment for the contract.

In considering the Iowa Service Co. case, 203 Iowa 610, 213 N. W. 401, it should be carefully kept in mind that the decision was prior to the enactment of what is now Code section 6134.02, permitting the issuance and delivery of revenue bonds to the contractor in payment for the improvement. This amendment to the statute was enacted by the Forty-fifth General Assembly, Extraordinary Session, chapter 74, taking effect in March 1934. The Iowa Service Co. case was decided by this court on April 5, 1927. At that time the only statutory authority for the disposition of the bonds that the town attempted was Code section 6258 which authorized the exchange of bonds only for an indebtedness which was "outstanding when the resolution authorizing such bonds was passed." The court, therefore, concluded that the town acted

in excess of the authority conferred by statute in attempting to dispose of the bonds. It will readily be seen that the amendment to the statute enacted in 1934, now Code section 6134.02, furnishes appellee town the statutory authority, which did not theretofore exist, to deliver the bonds to the contractor. The Iowa Service Co. decision is in no way inconsistent with the conclusion we have now reached that the present statute authorizes the delivery of revenue bonds to the contractor in payment of the contract price.

II. The remaining attack upon the legality of this transaction is that there was an illegal restriction upon competitive bidding by requiring contractors to take revenue bonds in payment of the contract.

As hereinbefore observed, there is no showing that any bidder submitted a higher bid because he was to be paid in bonds rather than in cash. Particularly is there an entire absence of showing that the successful bid was any higher than if payment was to have been made in cash.

Appellants did offer the testimony of different individuals who are in the contracting business to the effect that they refrained from bidding upon this improvement because of the provision in the notice for bids that the contractors were to be paid by the delivery of revenue bonds. This testimony very largely affords the basis for appellants' argument that the requirement of bonds was an illegal restriction upon competitive bidding.

It is true this court has held in different cases of this general character that the statutes contemplate competitive bidding upon improvements of this kind. See Iowa Electric Co. v. Cascade, 227 Iowa 480, 288 N. W. 633; Iowa Electric Light & Power Co. v. Grand Junction, 216 Iowa 1301, 250 N. W. 136; and the former Weiss opinion, 228 Iowa 1, 289 N. W. 469. However, it is not every limitation upon bidding that constitutes an illegal restraint upon competition. For example, in the Iowa Electric Co. case, 227 Iowa 480, 288 N. W. 633, this court held that a provision in the advertisement for bids providing for minimum wage rates to be paid labor on the contract is not an illegal restriction upon competition, even though it was said (page 485 of 227 Iowa, page 636 of 288 N. W.) : "This provision tends to .

increase the labor costs." As having some bearing on this question of competitive bidding, see Keokuk Waterworks Co. v. Keokuk, 224 Iowa 718, 738, 739, 277 N. W. 291, 302, 303.

It is true that in the former Weiss opinion this court said (228 Iowa 1, 13, 289 N. W. 469, 475): "The added requirement that the contractor accept the bonds, all of them, as the payment for the contract price, added further restrictions." The opinion makes it plain, however, that the court's holding was not that this item alone was sufficient to amount to unreasonable and illegal restriction on competitive bidding. It was the cumulative effect of this requirement in connection with (1) the provision that bidders must furnish all the labor and material for the entire improvement rather than to be permitted to bid on sections of the work, and (2) the requirement that the contractor advance $8,000 to the city to cover engineering and other expenses that this court held constituted illegal restriction upon competition.

In the proceedings now under attack, appellee town, doubtless pursuant to the former Weiss opinion, omitted the requirement that bidders furnish all the labor and material, but permitted bids on separate portions of the improvement, and also eliminated the provision as to advancing $8,000 for costs and expenses. The matter of payment by the delivery of bonds is the only claimed restriction on competitive bidding.

In this connection, it must be remembered that if competitive bidding is required upon contracts of this kind, it is only because the statutes so require. The legislature has the undoubted power to dispense with competitive bidding if it chooses so to do. This is recognized in the case of Iowa Electric Light & Power Co. v. Grand Junction, 221 Iowa 441, 264 N. W. 84, where it is said (pages 454 and 455 of 221 Iowa, page 91 of 264 N. W.) :

"We conclude that under the prior holdings of our court, the legislature could have dispensed with the matter of competitive bidding in the first instance, and that, therefore, it had the power to remedy by curative act by dispensing with competitive bidding after the work was done; * * *"

It occurs to us now that if the requirement that the con-

tractor accept his pay in revenue bonds may be called a restriction upon competitive bidding, it is one which the legislature had the perfect right to impose, and which it did impose by the enactment of what is now Code section 6134.02.

It is, therefore, our conclusion that the provision requiring the contractor to accept his pay in revenue bonds did not constitute an illegal restriction upon competitive bidding such as to justify injunctive relief.

We believe the trial court was right in dismissing appellants' petition, and its decree is accordingly affirmed.—Affirmed.

HALE, C. J., and MITCHELL, STIGER, BLISS, OLIVER, MILLER, and WENNERSTRUM, JJ., concur.